[No. B157977. Second Dist., Div. Eight. Mar. 12, 2003.]

In re the Marriage of AHARON and MICHAL ULTMAN ABARGIL.
AHARON ABARGIL, Appellant, v.
MICHAL ULTMAN ABARGIL, Respondent.

**COUNSEL**

Leslie Ellen Shear for Appellant.

Honey Kessler Amado for Respondent.

**OPINION**

**RUBIN, J.**—Appellant Aharon Abargil appeals from the judgment allowing Michal Ultman Abargil to move to Israel with their five-year-old son, Yuval. After review, we affirm.

## Procedural and Factual Background

Aharon Abargil and his former wife, Michal Ultman Abargil, are Israeli citizens. Aharon moved to the United States in the 1980's and Michal arrived in 1992. Both came to this country on tourist visas, which each of them violated by overstaying. Aharon has two applications for permanent residency pending with the federal government and may remain in this country while they are pending; we shall discuss the implications of Michal's visa violation shortly.

Aharon and Michal married in 1994. In November 1997, their son, Yuval, was born. For the first few months after Yuval's birth, Michal took care of him with her mother's help while continuing to run her ceramics business. Eventually finding it too hard, however, to balance caring for Yuval and owning her business, she closed the shop when Yuval was about one year old and became a stay-at-home mom.

In her role as Yuval's primary caretaker, Michal was a sensitive and engaging mother. She also assumed primary responsibility for tending to his medical needs, of which he had more than is usual because he suffered an esophageal reflux condition that eventually required surgery to correct. Aharon, who worked full time as a self-employed electrician, was on the other hand less involved in Yuval's care, although it is undisputed he loves his son very much. Aharon's time with Yuval was limited to evenings and weekends and when not otherwise working, as for example, when he occasionally took him to school.

When Yuval was about two and a half years old, Michal returned to work as a freelance graphic designer. She continued, however, to shoulder primary responsibility for Yuval's care. For example, only she visited his prospective day care and preschools, and only she volunteered her time at his preschool.

Aharon and Michal separated in March 2000. Yuval thereafter spent most of his time with Michal, but stayed with Aharon one or two nights a week and every other weekend. When Yuval was three, Michal took him to Israel with Aharon's consent to nurse Michal's dying mother. In April 2001, while Michal and Yuval were in Israel, Aharon filed for divorce. When Michal attempted to return to the United States after her mother's death, American immigration officials denied her a reentry visa because of her earlier tourist visa violation. Moreover, as an additional sanction, officials barred her from reentering the United States for 10 years, a sanction they temporarily stayed, however, solely to permit her to return to California to litigate custody of Yuval.

Following Michal's temporary return to the United States, a five-day custody trial ensued in which Aharon sought to prevent Yuval's relocation to Israel with Michal. At the end of the trial, the court found Yuval's remaining with his mother served his best interests for several reasons. First, she had been his primary caretaker his entire life. Second, she was more likely than Aharon to facilitate contact between Aharon and their son than if the roles were reversed and Aharon had custody and Michal had only visitation rights. The court therefore issued a relocation order on March 18, 2002, permitting Michal to take Yuval to Israel.

Michal and Yuval did not immediately leave for Israel, however, and on April 10, 2002, Aharon moved to reopen the custody proceedings. He argued conditions in Israel had deteriorated since the court's March 18 order to the point of constituting a change in circumstances. He pointed to the escalation of violence in Israel, marked by suicide bombers spilling from the West Bank and Gaza into Israel proper to target Israeli civilians. He also cited the issuance of travel advisories by the United States government warning Americans to defer travel to Israel and cautioning those Americans remaining there to exercise special care, particularly by avoiding crowded public areas. As further evidence of the danger of living in Israel, he noted that the University of California had recalled all of its students studying there.

The court denied Aharon's motion to reopen to receive evidence of recent events in Israel. It observed that the parties had explored during their trial the unrest and violence in Israel and Aharon's new evidence did not require any change in the analysis of those matters.

Aharon appealed from the relocation order permitting Michal to take Yuval to Israel and from the denial of his motion to reopen to receive new evidence. We stayed the relocation order pending the trial court's filing of its statement of decision, the entry of final judgment, and our disposition of the appeal. On August 7, 2002, the trial court filed its statement of decision and entered its final judgment.

## STANDARD OF REVIEW

■   We review for abuse of discretion relocation orders that permit a custodial parent to move away with a child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [109 Cal.Rptr.2d 575, 27 P.3d 289]; *In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 714 [121 Cal.Rptr.2d 356].)   ■   As Yuval's custodial parent, Michal has the presumptive right to move and take Yuval with her. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) As the noncustodial parent with visitation

rights, Aharon carries the burden of proving Michal's decision to move is not in Yuval's best interests; the burden is not on Michal to prove the contrary. (*In re Marriage of Lasich, supra,* 99 Cal.App.4th at p. 711.)

DISCUSSION

*Yuval's Best Interests*

Aharon contends moving to Israel is not in Yuval's best interests. In support he cites *In re Marriage of Condon* (1998) 62 Cal.App.4th 533 [73 Cal.Rptr.2d 33] (*Condon*), which analyzed a child's best interests when a parent takes a child from the United States. ■ In cases involving international relocation, the child's best interests at a minimum require, first, continuing contact between the child and the parent remaining in this country, and, second, guaranteed enforceability of the California custody order in the foreign nation. (*Id.* at p. 547.) ■ Aharon contends the move away order here fails *Condon*'s minimal requirements, and thus is not in Yuval's best interests.

We disagree because there was substantial evidence to the contrary. The court found Michal respected Yuval's relationship with Aharon and was likely to foster continuing contact between them. As an example of her efforts to nurture their father-son relationship, Michal helped Yuval make artwork for Aharon. In addition, before they went to Israel to care for Michal's dying mother, Michal left a cache of small gifts and photographs with Aharon for him to mail to Yuval while they were away. Finally, Michal permitted Aharon's relatives to visit Yuval during their stay in Israel.

Aharon, in contrast, did not respect Michal's parenting skills and disparaged her care of him. Aharon testified, "She can take care of him, but . . . only if it fits her needs. For her, it's more of a need to have Yuval, than for Yuval a need to have her. . . . Michal is a very selfish person. She doesn't care about Yuval . . . as much as she cares about herself." To support his characterization of Michal as a lesser parent than he, Aharon relies extensively on a report by a court-appointed psychologist, Dr. Bruce Harshman, who concluded Aharon was more likely than Michal to ensure contact between Yuval and the other parent. The court gave little weight, however, to Dr. Harshman's findings, viewing them as one-sided because he did not consider the evidence favoring Michal. As such, Dr. Harshman's findings are not dispositive, but merely create a conflict in the evidence which by itself does not undermine the court's judgment. (See, e.g., *Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1254-1255 [54 Cal.Rptr.2d 340] [reviewing court may not resolve conflicts in the evidence but must instead accept trial court's findings when supported by substantial evidence].)

Aharon contends the court also erred because Yuval's relocation to Israel will effectively end their relationship. He notes that Michal's visa violation means she cannot bring Yuval to this country for 10 years. At the same time, he cannot leave the United States for any extended time during the pendency of his application for permanent residency without jeopardizing his right to continue living here. He asserts in particular that he cannot visit Israel because Israeli law authorizes his indefinite detention if Michal were to seek to override the California custody order by initiating custody proceedings against him in Israeli courts.

The hurdles to meaningful contact that Aharon identifies cut both ways because they exist whichever direction one goes. For example, if Yuval remained in the United States with Aharon, it would be equally, if not more, difficult for Michal to see him because she cannot legally enter this country. At the same time, Aharon's uncertain legal status in the United States would make it risky for him to take Yuval to some place outside the United States to visit Michal. Solomon of the Old Testament had it easy. By threatening to cut a baby in half, he flushed out a child's true parent. Here, in contrast, we have two loving parents, each of whom wants Yuval, but it may sadly be only one of them who will see him with any certainty.

In addition to finding Michal would keep Aharon and Yuval in contact, the court took steps to ensure its judgment would be enforceable in Israel, thus satisfying *Condon*'s second minimal requirement for an international relocation order. For example, the court ordered Michal to register the judgment there, directing that "Upon her return to Israel, [Michal] shall register this California Judgment . . . in the Israeli courts to give this California Judgment the full force and effect of an Israeli judgment. Further, [Michal] shall take whatever additional steps are necessary to assure implementation of this California judgment re custody in Israel." It also ordered her to file with Israeli courts her stipulation consenting to the judgment and California's continuing jurisdiction over her and Yuval. (See *Muckle v. Superior Court* (2002) 102 Cal.App.4th 218, 226 [125 Cal.Rptr.2d 303] [by consenting to personal jurisdiction, party submitted to California's long-arm jurisdiction].) Moreover, the judgment had teeth to compel Michal's adherence because it required her to post a bond or other surety to ensure her compliance. (Accord, *Condon, supra,* 62 Cal.App.4th at p. 562 [court may fashion creative mechanisms such as bond and cut off of financial support to ensure overseas compliance].)

Aharon claims California's custody orders are nullities in foreign lands, making registration of the judgment in Israel meaningless. Because he makes his claim without citation to any authority, he has abandoned the issue.

(*People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284 [103 Cal.Rptr.2d 71].) In any event, Michal's expert on Israeli law suggested otherwise. That expert noted Israeli law permits parties to agree to be bound by a foreign judgment and then file their agreement with an Israeli court as an Israeli judgment. By winning Michal's consent to California's continuing jurisdiction, Aharon has precisely such an agreement that presumably an Israeli court would adopt as its judgment.

*Statement of Decision*

Aharon asserts that the court intended its March 18 order to be a final order. Because he had requested a statement of decision, he argues the court was obligated to issue its statement before issuing the order. As the order issued without a statement, Aharon contends it was void, requiring its automatic reversal. The court's later issuance of a statement in August, he adds, did not save the order, a proposition he supports by quoting the following language from *In re Marriage of Davis* (1983) 141 Cal.App.3d 71 [190 Cal.Rptr. 104]: " 'A judgment entered without findings where findings are required is a nullity . . .' [citation], and findings signed and filed after entry of such a judgment cannot resurrect it." (*Id.* at p. 77.)

The factual predicate of Aharon's argument fails him: the March 18 order was not a final order. We so held when we stayed the order after Aharon filed a notice of appeal from it. In doing so, we noted the order was not appealable and informed the parties we would await the trial court's entry of its statement of decision and final judgment, which would be appealable. In August, the trial court honored our directive by filing a statement of decision and entering its final judgment, albeit on the same day without any indication of which was filed first. Aharon does not show, however, that if we were to vacate the judgment and remand with directions that the trial court file its papers in the sequence Aharon urges, that the trial court would change its statement of decision or final judgment. He thus fails to show reversible error.

*Motion to Modify March 18 Order*

Following a spate of suicide bombings in Israel in the weeks after the court issued its March 18 order, Aharon moved on April 10, 2002, to modify the order. (See *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 [45 Cal.Rptr.2d 695] [motion to reopen or reconsider previous order requires new or different facts, circumstances, or law that for good reason were previously unavailable to party]; Code Civ. Proc., § 657, subd. 4 [newly

discovered evidence entitling party to new trial must have been unavailable even with the exercise of reasonable diligence].) Citing the increased violence, appellant urged the court to find Israel was too dangerous for it to be in Yuval's best interests to move there. The court granted Aharon's request that it hear the motion on shortened notice and set the hearing for six days later on April 16, 2002. The court gave Michal until April 15 to file her opposition.

At the hearing, the court denied the motion to modify because it found nothing new in Aharon's evidence of escalating violence in Israel, stating "Everything that was argued here was presented at the time of trial in one form or another, the entire situation in Israel, the incursions that were going on, the suicide bombings that were going on, all of those issues were raised." Moreover, the court found the Israeli town of Ramat Gan, or its neighboring city Givatayim, north of Tel Aviv where Michal intended to move, appeared to be relatively safe from terrorist attacks, as State Department travel advisories—which did not ban travel outright but merely warned against it—applied instead to Jerusalem, Gaza, and the West Bank.

We conclude the court ruled correctly. The question before the court was the danger, if any, to Yuval in moving to Israel. We would be naïve to believe—and the trial court did not conclude—there is *no* danger in living in Israel, only that the benefits to Yuval of growing up there under his mother's care outweighed the risks. We need not be drawn into the thicket of international diplomacy urged on us by Aharon's characterization of Israel as a war zone, because one must bear in mind that few, if any places, in the world are safe from all danger, be it political, ethnic, religious, natural, or random. The proper inquiry is whether Yuval's new life in Ramat Gan or Givatayim will be rich enough, loving enough, fulfilling enough, and secure enough for it to be his best choice in a world often of no perfect choices. The trial court found it was, and as substantial evidence supported its ruling, we see no basis for reversing it.

■ Aharon also moved to reopen the issue of enforceability of California custody orders in Israel. In support, he cited two experts in Israeli law. He makes no showing, however, of why he could not have presented such evidence at trial. Hence, his "new" expert evidence did not support a motion for modification because such evidence must have been previously unavailable even in the exercise of reasonable diligence. (*Glade v. Glade, supra,* 38 Cal.App.4th at p. 1457; Code Civ. Proc., § 657, subd. 4.)

Finally, Aharon appears to contend the court's expeditious handling of his motion to modify the March 18 order gave short shrift to his and Yuval's

fundamental interest in their parent-child relationship. According to him a lengthier process was required because so much was at stake. He particularly complains that the court overruled all of his objections and motions to strike Michal's evidence and denied his requests that the court take judicial notice of the travel advisories.[1] He also complains that the court did not read the reply he filed the morning of the hearing.

Aharon's complaint about the expedited proceedings ignores that the court proceeded on shortened notice at his request. In addition, he offers no argument supported by the record and authorities showing that the expedited proceedings were error. Instead, he cites authorities discussing the importance and protected status of the parent-child relationship, something no one disputes, but which also fail to show the court improperly denied his motion to modify the March 18 order.

*Remand Is Appropriate*

Although Aharon has not shown error by the trial court, we conclude the interests of justice require remand to ensure Aharon's relationship with Yuval receives the full measure of *Condon*'s protections. Upon remand, the trial court shall modify its judgment to ensure the following:

First, it shall require Michal to post a substantial financial bond in a specific amount sufficient to ensure her compliance with the court's judgment and orders. (*Condon, supra,* 62 Cal.App.4th at p. 548.)

Second, it shall prohibit Michal, who has consented to California's continuing jurisdiction over Yuval, from attempting to modify the judgment except upon application to a California state court. (*Condon, supra,* 62 Cal.App.4th at pp. 535-536, 562.) Any attempt by Michal to modify the judgment by application to any non-California court may, in the trial court's discretion and absent a showing of good cause, be deemed a violation of the

---

[1]Aharon twice requested that the court take judicial notice of travel advisories. The first time was when he filed his motion to modify the March 18 order. The court denied that request because Aharon did not comply with the statutory requirements for requesting judicial notice. The second request for judicial notice came the morning of the hearing, when Aharon submitted an updated State Department travel advisory, but the court denied the request because it was too late. Assuming for argument's sake that the court should have granted Aharon's requests for judicial notice, the court's error was harmless. The parties had litigated, and the court knew, the risks of moving to Israel. The travel advisories added little, if anything, to what anyone who followed the court proceedings (and current events) already knew about the unrest in Israel. In any event, as we have noted, the advisories did not, as Aharon contends, ban travel to Israel; instead, they simply cautioned Americans against taking unnecessary trips to Israel and warned that they pay special attention to their safety while there.

court's judgment and grounds for forfeiture of the bond and other sanctions that the trial court may deem appropriate. (*Id.* at p. 562.)

Finally, Michal must register the trial court's judgment with the proper Israeli authorities before she may take Yuval to Israel. Until the judgment is registered, the stay barring Yuval's departure from California shall remain in place. Upon entry of the judgment in Israel, and upon a further finding by the trial court that Michal is in full compliance with the court's judgment, the stay shall lift and she may take Yuval to Israel.

## DISPOSITION

The matter is remanded for further proceedings as described in this opinion's section entitled "Remand Is Appropriate." Each side to bear its own costs on appeal.

Cooper, P. J., and Boland, J., concurred.