[No. C064741. Third Dist. June 30, 2011.]

JACOB A., Plaintiff and Respondent, v.
C.H., Defendant and Appellant.

1592

## Counsel

Matthew K. Purcell for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## Opinion

**BUTZ, J.**—C.H., the mother (mother), appeals from a postjudgment order denying her request to relocate to the State of Washington with the parties' minor child and modify the parenting schedule accordingly. Mother contends the trial court erred by denying her request to relocate with the minor child and refusing to modify the parenting schedule despite her stated intent to move. We find the trial court's order was based on incorrect legal assumptions and failed to address the legal issue presented by mother's request to relocate with the child (i.e., what custody arrangement would be in the child's best interests when mother relocates to Wash.).

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and Jacob A., the father (father), were never married but they have a daughter, K.A., now seven years old, who suffers from "Type I" juvenile diabetes. When mother and father ended their relationship in December 2007, mother moved to Washington with the minor child. Mother indicated that she moved to escape an "unhealthy environment." Father claimed mother moved only to deny him his parental rights.

Mother returned to California with the child and, in January 2008, father petitioned for custody of the minor child. Shortly thereafter, mother filed her first motion seeking permission to move to Washington with the minor child.

Mother and father attended mediation; the mediator recommended "the move not take place and that [m]other have primary custody if she remained in California." After a brief evidentiary hearing, the court denied mother's request to move with the child and ordered joint legal and physical custody to the parents.

A second mediation occurred on February 1, 2008, in which father did not participate. Then, a third mediation took place on February 5, 2008. Following the third mediation, the mediator opined, " 'it would be detrimental to the father/daughter relationship to move [K.A.] so far away from her father. A child [K.A.'s] age continues to form attachments and bonds with primary care givers, and the fact that father . . . most likely would not be able to travel to Washington on any consistent basis is of concern. [K.A.] needs both parents in her life. Father has been a consistent presence since [K.A.'s] birth. . . .' "

Mother and father ultimately agreed to the mediator's parenting plan, which precluded mother from relocating to Washington with the minor and gave the parents relatively equal parenting time:

"Week 1: Father drops [K.A.] off at daycare 8:00 a.m. on Monday. Mother has custody 8:00 a.m. Monday through 8:00 a.m. Tuesday. Father has custody 8:00 a.m. Tuesday through 2:00 p.m. Wednesday. Mother has custody 2:00 p.m. Wednesday through 8:00 a.m. Monday. Father has a visit on Friday from 5:00 p.m. to 8:00 p.m.

"Week 2: Mother drops [K.A.] off at 8:00 a.m. Father has custody 8:00 a.m. Monday through 2:00 p.m. Wednesday. Mother has custody from 2:00 p.m. Wednesday through 3:00 p.m. Saturday. Father has custody 5:00 p.m. Saturday to 8:00 a.m. Monday."

In November 2008, father received another notice from mother indicating that she wanted to relocate to Washington with the minor child. Father opposed the relocation and asked that a specific holiday schedule be adopted for the current parenting schedule. The parties attended mediation in mid-December 2008 and a holiday schedule was adopted; no decision was made regarding mother's request to move with the minor.

In August 2009, mother filed another request to move to Washington with K.A. and modify the parenting schedule accordingly. Mother said that, despite her best efforts, she could not find work where she was currently living, but she had a job waiting for her in Washington, as well as her extended family.

Mother argued the child's best interests were served by relocating with her to Washington and visiting father. In support of her claim, mother relied on

her strong bond with the child, as well as the child's attachment to mother's family in Washington. Mother argued it was not in K.A.'s best interests to stay in California with father as her primary custodial parent because father lacked experience in dealing with K.A.'s juvenile diabetes and had a history of making poor parenting choices (i.e., driving with a suspended license with the child in the car, failing to put the child in a car seat, his arrest for driving under the influence, and failing to change K.A.'s insulin pump infusion site as required). Father opposed mother's request and the parties were referred to mediation.

Mother and father met with the court-appointed mediator, Kimberly Wilson, but failed to reach any agreements. Rather than making her own recommendation about a parenting plan that would be in the child's best interests when mother moved to Washington, however, Wilson recommended that the court appoint counsel for the minor "to investigate [the] best interests of [K.A.] with respect to a move to Washington."

On October 16, 2009, Mark Cudney was appointed as the minor's counsel and the hearing on mother's request for a move-away order was continued to October 30, 2009. Prior to the continued hearing, Cudney prepared his own report. In his report, Cudney concluded that "[t]he parties are entitled to a full evidentiary hearing on [m]other's request to move the primary residence of the minor child to Washington. [¶] In the interim, the child should continue to reside in El Dorado County. [¶] The Court should ultimately consider a parenting plan with more stability such as a 2-2-5-5 plan.[1] [¶] A review hearing should be set if [m]other still intends to move her primary residence to Washington without the minor child."

The matter was then set for trial in March 2010.

At trial, mother testified about her failed efforts to find work locally. She described her extended family in Washington, as well as the two job offers she had pending in Washington. Mother opined that she would be better able to support K.A. financially in Washington, where finally she would have full-time employment. Mother also indicated that her family would provide additional support for K.A., and she and K.A. would live with her parents. Mother would have health care coverage for K.A. through mother's employment, and would have supplemental coverage through her mother while they lived with her parents.

---

[1] We presume minor's counsel is using shorthand to describe a parenting schedule whereby the minor child would be with mother for two days, father for two days, mother for five days, and father for five days. Such a parenting schedule results in approximately equal parenting time.

Mother described the parenting plan she envisioned if K.A. were permitted to move to Washington with her: Father would visit K.A. in Washington twice monthly; mother would facilitate Web cam visits, nightly telephone calls, and e-mails with pictures. Mother further agreed father could visit K.A. with "as little as 24-hours' notice." Mother was also "open to negotiations for how [father] would like to visit [K.A.] and spend time with her."

Mother also described the parenting plan she envisioned if K.A. were not permitted to move to Washington with her: K.A. would be with mother whenever she was not in school; there would be regular Web cam visits, nightly phone calls, and visits with K.A. with as little as 24- or 48-hours' notice.

Mother explained her experience with Type I diabetes, noting that she, like K.A., suffered from Type I diabetes. She talked about her close relationship with K.A., and said she was "passionate about being her mother." Mother acknowledged K.A. would miss her father and his family if K.A. moved to Washington. Mother also acknowledged that K.A. loves her father "very much," and she would continue to include father in the details of K.A.'s life if K.A. moved with her to Washington.

Father testified that if K.A. moved to Washington his contact with her would be "limited to nonexistent" because he could not afford the airfare to and from Washington. Father explained he was unwilling to put K.A. on a plane by herself between Seattle and Sacramento; he simply did not believe it was safe enough given K.A.'s diabetic condition.

Father also testified he has significant experience with Type I diabetes, having lived with mother and K.A. He indicated that he believes he is perfectly capable of caring for K.A. when she is in his custody. Father's girlfriend testified that father not only is capable of caring for K.A.'s medical needs, but regularly does. She also explained her training as a nanny and her experience with managing juvenile diabetes.

Father's parents testified that they had been part of K.A.'s life since she was born. Father lived next door to his parents for three years, beginning when K.A. was 10 months old. Father then moved in with his parents for nearly a year. Thus, they saw K.A. regularly when she was in father's custody. Father's parents both said they are capable of caring for K.A.'s medical needs, and have already done so.

Mediator Wilson testified that one of her greatest concerns about K.A.'s moving to Washington with mother was father's inability to pay for regular trips to visit K.A. In Wilson's opinion, it would be detrimental to K.A.'s

relationship with father if they were not able to have frequent contact. Wilson agreed there would "absolutely" be a "similar detrimental impact to the relationship between [K.A.] and . . . mother" if mother moved and K.A. remained in California. However, Wilson did not include that in her report because "it was not [her] impression that mom would go ahead and move, anyway, and leave [K.A.] behind . . . ."

Mediator Wilson further explained her position to the minor's counsel, Cudney, when he asked her:

"[CUDNEY]: Ms. Wilson, you had testified that you had an impression that mom would not move to Washington without [K.A.]. What information did you provide your impression with?

"[WILSON]: Well, she's been, I think, very consistent in expressing the opinion that she is much more diligent about [K.A.'s] health concerns and her educational needs and that she is better suited to be [K.A.'s] primary caregiver. And although we didn't discuss that, I guess I should say that it's my impression that the strengths of those convictions led me to believe that she most likely would not move without her daughter."

Wilson expressed her own concerns about father's ability to care for K.A. She was concerned that father had been pulled over for driving on a suspended license with K.A. in the car, and that, on a separate occasion, father had been convicted of driving under the influence. Wilson was further concerned that father failed to make contact with K.A.'s therapist, and made unilateral decisions regarding K.A.'s daycare.

In Wilson's opinion, father had taken too long to get appropriate training for managing K.A.'s diabetes, and Wilson believed father was "minimizing" mother's concerns about changing K.A.'s infusion sites as needed. Wilson also was troubled by the fact that it was not father caring for K.A.'s infusion site when she was in his custody, but father's girlfriend. Wilson further explained that mother had "tried to engage" father in K.A.'s daily life (i.e., her appointments and therapy) but father failed to follow through, then blamed mother when he did not have the information.

The minor's counsel, Cudney, argued against mother's request. Cudney also expressed grave concern for the relationship between K.A. and father if K.A. was relocated to Washington. Cudney was further concerned with the effect a move would have on K.A.'s relationships with her paternal grandparents, her friends, her long-term babysitter, and her doctors.

Cudney argued that mother's concerns about father's shortcomings as a parent were "overexaggerated." In Cudney's opinion, father "is a wonderful

parent." Mother, Cudney indicated, also "is a wonderful parent." In fact, Cudney opined, mother "is a better parent." Cudney noted that even he "[could] see that." She is, in Cudney's opinion, "[m]ore attentive to [K.A.'s] needs."

Cudney then concluded, "I just don't believe it's in the best interest[s] for this move to take place. I don't believe that [mother] is going to move. She's a fantastic parent. She cares for her child. She doesn't trust [father] being left alone. I don't think she's going to move if the Court says 'no, you can't move.' I think it would be detrimental. I agree with [Mediator] Wilson in her report it would be detrimental on the father/child relationship she's developed at a young age if the child is allowed to move."

The trial court subsequently ruled that mother's move was not motivated by bad faith. Nevertheless, the trial court concluded, "under the circumstances, given all of the evidence that has been presented, I do not feel that a move to Washington would be in [K.A.'s] best interest[s]. So I'm going to have to deny the request for the move-away. [¶] . . . [¶] . . . [F]or the time being, I would maintain the existing parenting plan."

In a March 23, 2010 statement of decision, the trial court explained its reasons for denying mother's request on March 2. In sum, the court explained, "While it may be obvious that the proposed move is in the best interest of [mother], it does not necessarily follow that such a move would also be in the best interest of [K.A.]. The proposed move would uproot [K.A.] from all her familiar friends and surroundings and would significantly impact the current *permanent* time-share arrangement in which she enjoys frequent interaction with both parents. The Court therefore finds, in its discretion, that the proposed move would not be in the best interest of the minor child in this instance, and so denies the requested Move Away Order."

## DISCUSSION

The sole issue on appeal is mother's claim that the trial court erred in denying her request to relocate with the minor child to Washington and modify the parenting schedule accordingly.[2] Specifically, mother contends the trial court's decision to maintain the status quo ignored mother's stated intent to relocate to Washington, resulting in an order that is physically impossible to comply with and effectively prohibits mother from moving. We agree.

We review orders granting or denying move-away requests for abuse of discretion. (*In re Marriage of Abargil* (2003) 106 Cal.App.4th 1294, 1298

---

[2] Father did not file a respondent's brief.

[131 Cal.Rptr.2d 429].) Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473]; *In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610 [18 Cal.Rptr.3d 685].) "A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124–1125 [124 Cal.Rptr.3d 200] (*Mark T.*).)

■ This matter was in the trial court on mother's motion to modify a permanent custody order granting the parties joint custody of the minor child and equal parenting time. In joint custody cases, a parent seeking to relocate with the minor child "bears no burden of proving the move is essential or imperative." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 363 [50 Cal.Rptr.3d 398] (*Niko*).) The opposing nonmoving parent also is not required to show that substantially changed circumstances "require a change in custody or that the move will be detrimental to the child." (*Id.* at pp. 363–364.)

■ "[W]hen the trial court is faced with a request to modify the existing custody arrangement on account of a parent's plan to move away (unless the trial court finds the decision to relocate is in bad faith), the trial court must treat the plan as a serious one and must decide the custody issues based upon that premise. The question for the trial court is not whether the parent may be permitted to move; *the question is what arrangement for custody should be made [when the parent moves]*." (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1205–1206 [62 Cal.Rptr.2d 766], some italics omitted & italics added (*Ruisi*); see *Mark T., supra*, 194 Cal.App.4th at p. 1126.)

"The value in preserving an established custodial arrangement and maintaining stability in a child's life is obvious. But when the status quo is no longer viable and parents have joint custody, a court must review de novo the best interest of the child. It can fashion a new time-share arrangement for the parents." (*Niko, supra*, 144 Cal.App.4th at p. 364.)

Accordingly, when a trial court is considering a parent's request to relocate with a child, thus modifying a permanent custody order, the court "must decide de novo what physical custody arrangement would be in the child's best interests, *assuming that the requesting parent will relocate*." (*Mark T., supra*, 194 Cal.App.4th at p. 1127 [addressing a request to relocate in the context of an initial custody determination]; see also *Niko, supra*, 144 Cal.App.4th at pp. 363–364.)

 After reviewing the record, we conclude the trial court misapplied the relevant legal standard in deciding mother's request to relocate with the child. Here, the trial court was required to decide de novo what physical custody arrangement would be in K.A.'s best interests, assuming mother would be living in Washington. The trial court attempted to determine a custody arrangement that was in the child's best interests, but failed to analyze the issue based on the presumption that mother would be moving to Washington.

In *Niko*, the Court of Appeal, Fourth Appellate District, Division Three, considered a set of circumstances similar to those presented here. (*Niko, supra*, 144 Cal.App.4th at 364.) There, the parents shared joint custody of their minor child based on a permanent custody order. (*Id.* at p. 349.) The parents also had a detailed parenting plan that resulted in approximately equal parenting time for both parents. (*Id.* at fn. 1.) The mother decided to move from California to Colorado, so she sought sole custody of the minor and requested permission to take the child with her to Colorado. (*Id.* at pp. 349, 364.) The father opposed the mother's request, and sought an order maintaining the status quo. (*Id.* at pp. 350, 364.)

After an evidentiary hearing, the trial court continued the joint custody order, but permitted the mother to relocate with the child and modified the parenting plan accordingly. (*Niko, supra*, 144 Cal.App.4th at pp. 362, 365.) The father appealed and the appellate court confirmed the trial court's ruling. (*Id.* at p. 365.) In so doing, the court noted it could not "conceive of a plan . . . that would maintain the status quo with [the mother] living in Colorado and [the father] living in California." (*Id.* at p. 364.) Moreover, the court found, "[t]o maintain the status quo, the court would have been required to prohibit [the mother] from moving and the court has no such authority. (*In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1581–1582 [271 Cal.Rptr. 389].)" (*Niko, supra*, at p. 364.)

Here, mother and father share joint custody of K.A., with approximately equal parenting time. Mother has decided to move to Washington where she has full-time employment with benefits and a large family network to help support her and K.A. Mother asked the trial court for permission to bring the minor with her to Washington and to modify the parenting schedule appropriately. It was, thus, incumbent upon the trial court to determine whether it was in the child's best interests to relocate with mother to Washington and visit father, or remain in California with father and visit mother, then devise an appropriate parenting schedule. (*Mark T., supra*, 194 Cal.App.4th at pp. 1127–1128; *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 22–23 [123 Cal.Rptr.3d 120] (*F.T.*); *In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 464 [50 Cal.Rptr.3d 459] (*Paillier*); *Niko, supra*, 144 Cal.App.4th at pp. 363–364.) Unfortunately, that is precisely what the trial court failed to do here.

Faced with an admittedly difficult decision, the trial court skirted the question entirely and issued an order purporting to maintain the status quo. Like our colleagues in the Fourth Appellate District, Division Three, we cannot conceive of a plan that would maintain the status quo with mother living in Washington and father living in California. Rather, by issuing such an order, the trial court effectively prohibited mother from moving, which is an abuse of the court's discretion. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1098 [12 Cal.Rptr.3d 356, 88 P.3d 81]; *Mark T., supra,* 194 Cal.App.4th at pp. 1128–1129; *F.T., supra,* 194 Cal.App.4th at p. 22; *In re Marriage of Fingert, supra,* 221 Cal.App.3d at pp. 1581–1582.)

■ In issuing its order, the trial court determined it was in K.A.'s best interests to continue having "frequent interaction with both parents." It is generally true that frequent interaction with both parents is in a child's best interests, that is the ideal; however, when one of the parents has stated an intent to relocate out of state, such a result is no longer possible. The court must then navigate the delta between the ideal and the reality and consider what is in the child's best interests under the circumstances presented. Failing to do so is an abuse of the court's discretion. (*F.T., supra,* 194 Cal.App.4th at p. 22 [avoiding the fundamental question before the court is an abuse of discretion].)

Although it is ultimately the trial court's error that we review on appeal, the error here did not arise in a vacuum. Here, the genesis of the court's error can be traced directly to the failures of the court-appointed mediator and the minor's counsel.

As the court-appointed mediator, Wilson's job was to work with mother and father to reach an agreement on a parenting plan that would be in K.A.'s best interests once mother moved to Washington: relocate with mother, or remain in California with father. (*Paillier, supra,* 144 Cal.App.4th at p. 464; Super. Ct. El Dorado County, Local Rules, rules 8.14.02 & 8.14.03.) Barring an agreement, it was Wilson's job to issue a recommendation on whether it would be in K.A.'s best interests to relocate with mother to Washington and visit father or remain in California with father and visit mother. (*Paillier, supra,* 144 Cal.App.4th at p. 464; Super. Ct. El Dorado County, Local Rules, rule 8.14.04.) To perform either of those tasks, Wilson had to presume mother was relocating to Washington, with or without K.A. (*Mark T., supra,* 194 Cal.App.4th at p. 1129; *F.T., supra,* 194 Cal.App.4th at p. 22; *Ruisi, supra,* 53 Cal.App.4th at pp. 1205–1206.) She did not.

At trial, Wilson testified it would have a significant negative impact on K.A. if mother relocated to Washington and K.A. remained in California with father. However, she failed to include that in her report because she

assumed mother would never move to Washington without K.A. The minor's counsel, Cudney, made the same assumption.

Appointed to represent the minor's best interests, Cudney's job, like Wilson's, was to determine whether it was in K.A.'s best interests to move with mother to Washington and visit father, or stay in California with father and visit mother. However, he too believed mother would never move to Washington unless K.A. was moving with her. Consequently, both Wilson and Cudney failed to address the legal question presented by mother's motion. Instead, they created their own, alternate question: Assuming mother will not move to Washington without K.A., is it in K.A.'s best interests to move with mother and visit father or remain in California where she can continue to have frequent contact with both parents? By beginning their analysis with the assumption that mother would not relocate without K.A., and persuading the trial court of the same, Wilson and Cudney created a scenario whereby an order maintaining the status quo was not only viable but preferable, even though such an order is legally unsound given the circumstances.

That Wilson, Cudney, and the trial court misunderstood the legal issue presented by mother's motion is no more evident than in the closing colloquy between Cudney and the court: .

"[CUDNEY]: . . . If she—if mom does in fact move to Washington, does the Court have an order as to what the existing parenting plan should be?

"THE COURT: Well, I think I would cross that bridge when we come to it."

What everyone failed to comprehend was that mother's motion to relocate with K.A. was "that bridge"; what parenting plan would be in K.A.'s best interests when mother moved to Washington was the precise issue raised by mother's request to relocate with K.A. Unfortunately, because Cudney, Wilson, and the trial court all assumed mother would stay in California unless K.A. was permitted to relocate with her, the issue was never addressed.

On remand, the trial court shall bear in mind that whether the minor's counsel, the mediator, or it believes mother will not move without the child, is legally irrelevant. Mother has a right to move and she has decided to move; that is the premise from which the legal analysis must begin. Moreover, when issuing its decision, the trial court is reminded that it has no authority to issue an order for the purpose of coercing mother into abandoning her plans to relocate. (*In re Marriage of LaMusga, supra*, 32 Cal.4th at p. 1098.)

In conclusion, the issue raised by mother's motion to relocate with the minor child is thus: Mother is moving to Washington. Is it in the minor's best interests to relocate with mother and visit father, or to remain in California with father and visit mother? Once that question is answered, the court must devise an appropriate parenting schedule. Neither an order maintaining the existing parenting plan, nor an order for a "2-2-5-5" parenting schedule, as proposed by Cudney, is an option when the parents are living in different states.

The decision to move a child away from one of his or her parents is one of the most difficult decisions a judge will ever have to make. Nevertheless, the decision cannot be avoided by coercing the moving parent into staying or prohibiting her from moving.

## DISPOSITION

The order of the trial court is reversed. The matter is remanded to the trial court for a new determination of custody and visitation based on mother's proposed move to Washington. Mother is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Raye, P. J., and Murray, J., concurred.