Filed 2/18/15  D.B. v. R.O. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| D.B., | |
| Plaintiff and Appellant, | E059672 |
| v. | (Super.Ct.No. IND101102) |
| R.O., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Gregory J. Olson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

La Quinta Law Group and Timothy L. Ewanyshyn for Plaintiff and Appellant.

Iris Joan Finsilver for Defendant and Respondent.

Plaintiff and appellant D.B. (mother) appeals from the trial court's denial of her request to modify custody and visitation orders to allow her to relocate to the State of Illinois with the parties' minor child (move-away request).  The child's father, defendant and respondent R.O. (father), opposed the move-away request.  Mother contends the trial court erred by "failing to perform its function of weighing evidence in its correct priority,

1

and in some circumstances by failing to consider certain mandatory factors at all." We find no abuse of discretion, and affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Mother and father were never married to one another, but lived together in the Coachella Valley briefly, beginning in November 2005 and continuing through April 2006, shortly after their child was born in February 2006. Initially, mother and father shared custody roughly equally, pursuant to informal arrangements made among themselves without court involvement. In July 2010, mother filed for custody. Thereafter, the parties participated in a mediation, resulting in a stipulated parenting plan that split custody on a "5-5-2-2" basis, whereby the parties would alternate having the child, taking turns for five days each, and then two days each. Pursuant to the parties' stipulation, the court further ordered that the child not be removed from California.

Mother was first diagnosed with cancer in 1997, but was treated successfully. In May or June 2011, however, it was discovered that she had cancer again.[1] After surgery in September 2011, she was again believed to be cancer free.

In February 2012, mother filed the move-away request at issue. In her declaration in support of the request, mother stated that she had continued to struggle to recover financially and emotionally from her cancer treatments. Additionally, she had been laid off of work in March 2011, and was being forced to move out of her relatively

_____

[1] Mother's declaration in support of her move-away request differs from her oral testimony regarding the date of her diagnosis. The exact date is, however, immaterial to the present appeal.

2

inexpensive rental because of a sale of the premises. Mother's family had offered her and the child a place to stay rent free in her hometown in Illinois. On that basis, mother requested that the court modify the previous custody and visitation orders to allow her to move back to Illinois while she recovered her "health, emotions, and finances with generous visitation to [father] if we are unable to come to an agreement independently."

In March 2012, mother's cancer returned. After that point, mother was at least sometimes incapacitated by her illness, and unable to care for the child on the 5-5-2-2 basis stipulated to by the parties, and ordered by the court. In December 2012, mother moved to Illinois without the child; according to her, treatment she required was available at a cancer center not far from her hometown in Illinois, but not in the Coachella Valley, or elsewhere locally. After mother moved to Illinois, the child lived primarily with father, and had only a few in-person visits and telephone contact with mother.

Trial with respect to the move-away request was initially set for October 2012. The matter was continued several times, however; evidentiary hearings were eventually conducted on May 20, May 21, June 4, and June 6, 2013, and the parties presented their closing arguments on July 5, 2013. Mother was able to participate in the trial; as of December 2012, her condition had been considered "inoperable" and her prognosis was "poor," but she apparently responded well to chemotherapy, and by May 2013 was in remission.

On July 15, 2013, the trial court issued a written "Ruling on Submitted Matter." The trial court ruled in the alternative, depending on whether mother decides to relocate to Illinois. If mother decides to continue to reside in the Coachella Valley, the court

3

would reinstate the previous "5-5-2-2 plan" ordered in 2010. If mother chooses to reside in Illinois, the court would award primary physical custody to father, with whom the child would reside during the school year, while mother would have the child during specifically identified school breaks, including summer vacation, winter break, and every other Thanksgiving break.[2]

## II. DISCUSSION

As noted, mother contends that the trial court erred by "failing to perform its function of weighing evidence in its correct priority, and in some circumstances by failing to consider certain mandatory factors at all." Having reviewed the record, we find no appropriate basis to make such a finding.

"The question for the trial court is not whether the parent may be *permitted* to move; the question is what arrangement for custody should be made." (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1206, fn. omitted.) The factors the court should consider in deciding whether to modify a custody order in light of a custodial parent's proposal to change the residence of the child include "the [child's] interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the [child]; the [child's] relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the [child] above their individual interests; the wishes of the [child] if [he or she is] mature enough for such an inquiry to be appropriate; the reasons for the

---

[2] Additional facts are discussed below as necessary to address mother's claims of error.

4

proposed move; and the extent to which the parents currently are sharing custody." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101 (*LaMusga*).)

"We review orders granting or denying move-away requests for abuse of discretion." (*Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1598-1599.) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child." (*Id*. at p. 1599.) "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.'" (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595 (*Lester*).)

Here, the trial court explicitly considered the *LaMusga* factors, among other things, in making its decision. In its written ruling, the court discusses the evidence presented at trial, and the reasoning behind its decision to effectively deny mother's move-away request, at some length. The court chose to place particular emphasis on the circumstance that the child's relationship with father had become her "primary attachment," as a result of mother's illness and subsequent absence, while also recognizing that both parents had demonstrated that they could provide a "loving and healthy home" for the child. The court's decision to place particular weight on the "emotional stability" that father could continue to provide the child is hardly unreasonable. Indeed, it is an independently sufficient basis for the trial court to conclude that granting mother's move-away request would not be in the best interest of the child. Even if we were inclined to disagree with the trial court's decision—and upon

5

review of the record, we are not so inclined—we would have no appropriate basis to disturb it.

Mother contends that the trial court failed to consider "which parent is more likely to allow the child to have frequent and continuing contact with the other parent," referring to the policy, codified in Family Code section 3020 (section 3020), to "assure that children have frequent and continuing contact with both parents . . . except where the contact would not be in the best interest of the child . . . ." (Family Code, § 3020, subd. (b).) This argument fails for at least two reasons. First, the trial court explicitly states in its ruling that it took section 3020 into account in making its decision. Second, and more importantly, the trial court's order reflects an effort to assure that the child would have frequent and continuing contact with both parents, no matter whether mother relocates to Illinois permanently or not. As noted, pursuant to the court's order, if mother chooses to reside in the Coachella Valley, custody will be shared equally with father, on the previously ordered 5-5-2-2 basis. If mother chooses to reside in Illinois, the child will visit her in Illinois as often as reasonably practicable given the child's primary residency in California, that is, for the bulk of substantial school breaks, with the exception of every other Thanksgiving. The court further ordered that, whenever the child is with one parent, the other parent is to have regular telephone or Skype contact at least twice per week at a specified time, as well as whenever the child desires. There is simply no basis in the record to conclude that the court failed to consider the policies codified in section 3020, or that the court was compelled to give those factors different weight so as to yield a different outcome.

6

Mother further takes issue with the trial court's finding that the parties "'had a consistently amicable sharing history'" until mother made her move-away request, arguing that this finding is not supported by the record. Not so. When asked how the 5-5-2-2 arrangement had been working, father testified that it was "working good," and only stopped working when mother became more incapacitated, which, as noted above, was after mother filed the move-away request. Similarly, when asked whether mother was having frequent problems with the 5-5-2-2 plan, mother responded "No." Mother's lengthy discussion in her briefing of certain specific events, most of which occurred *after* the move-away request, hardly demonstrates that the trial court's finding regarding the parties' sharing history for the period *before* the move-away request was unsupported by the record.

Finally, mother complains that the trial court should have given different weight to certain lines of evidence; that it should have given more weight to evidence of purported "misrepresentations" by father on a variety of topics, as well as questions mother attempted to raise about father's immigration status and the process by which he had obtained a green card, but less weight to evidence that the child is happy and doing well in her current school. Mother's characterization of the evidence is at least arguable, in some respects. But we need not delve into any discussion of that issue. The more fundamental problem is that these lines of argument "fail to recognize the limited scope of our review under the abuse-of-discretion standard." (*Lester*, *supra*, 84 Cal.App.4th at p. 595.) We are not empowered to reweigh the evidence, and nothing in mother's arguments persuades us that the trial court could not reasonably have concluded that the

7

"emotional stability" father could provide the child outweighed any of the other considerations mother raised, even accepting for the sake of argument mother's characterization of the evidence.  As such, she has demonstrated no abuse of discretion.

## III. DISPOSITION

The order appealed from is affirmed.  Father shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:


RAMIREZ
P.J.

CODRINGTON
J.