Filed 10/23/23  C.M. v. T.B. 4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| C.M., | D080579 |
| Appellant, | |
| v. | (Super. Ct. No. 17FL000206C) |
| T.B., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Terrie E. Roberts, Judge.  Affirmed.

C.M., in pro. per., for Appellant.

T.B., in pro. per., for Respondent.

C.M. (Father) appeals an order granting the request of T.B. (Mother) to move their daughter from California to Texas.  Father argues the court abused its discretion by misapplying the relevant factors under *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*).  He also claims the superior court erred in denying his motion for reconsideration.  We disagree with these contentions and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother began dating in 2015. They have a child (T.C.), who was born in July 2016. The couple ended their romantic relationship at the end of 2016, briefly reconciled in 2017 but are no longer together. Father and Mother have shared joint physical custody of T.C. since July 2018.

On September 27, 2021, Mother filed a petition for, among other things, an order to allow her to move to San Antonio, Texas with T.C.

On February 7, 2022, the superior court held an evidentiary hearing on Mother's petition.[1] At that hearing, the court reviewed declarations filed by the parties as well as a Family Court Services report dated January 19, 2022. In addition to the testimony of Mother and Father, the court heard the testimony of three other witnesses. At the close of the hearing, the court took the matter under submission.

Nine days later, the superior court issued a detailed minute order granting Mother's move away request. In that order, the court explained that the "ultimate question" before it was: "What custodial arrangement is in the best interest of [T.C.]?"

The court also detailed its findings in the minute order. To this end, the court began by concluding that Mother was not acting in bad faith in requesting to move. Thus, the court noted that there had not been any litigation between Mother and Father during the three previous years. Further, the court observed no intention on behalf of Mother to frustrate Father's time with T.C. Rather, the court found that Mother made her request "in good faith because she is moving on with her life and going to get married to a person who resides in San Antonio, Texas."

---

[1] There is no reporter's transcript of the February 7, 2022 hearing in the record.

The court then analyzed the *LaMusga* factors, which include "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga, supra*, 32 Cal.4th at p. 1101.)

Regarding the child's interest in the stability and continuity of the custodial arrangement, the court noted that Mother and Father had adhered to a "50/50 schedule since July 2018." The court observed that, because the Father experienced a "serious accident . . . in 2020, he can no longer drive, so he has had to have family members provide transportation for him [and T.C.]." As such, pick up locations were sometimes sporadic as Mother had to travel to various locations in Spring Valley, El Cajon, San Diego, Alpine, and Campo to get T.C. because Father's family members and friends were providing transportation and, at times, Father and T.C. would be staying at friends' or family members' respective houses. The court found that, until Father is able to resume driving, T.C. may experience "some instability and disruption in [her] pattern of care" if the court decided T.C. could not move to Texas with Mother.

The court stated that Father contended that Mother had moved three times in the past year. Mother explained that she was struggling to find a job during that time, but the court found that she had "obtained full time employment" before the February 7 hearing and "managed to save some

3

funds to assist her while she looks for a job in San Antonio." In addition, the court found that Father was unemployed and was living on his savings since disability payments stopped in October 2021.

Concerning the distance factor, the court found that the distance between San Diego and San Antonio "is significant." The court emphasized that travel between the two locations would be "a financial burden for both parents, but even more so for the father due to the fact that he is currently unable to work in his field and no longer receiving disability payments." Mother's fiancé testified that he would be willing to assist in paying for T.C.'s travel costs to ensure she would be able to see her father, but the court noted that the fiancé "ha[d] no legal obligation to do this."

Because T.C. was only five years old at the time of the hearing, the court determined that she was "too young to provide an opinion on the move."

The court found that T.C. spends an equal amount of time with her parents, has a strong bond with them, and is attached to both of them. Therefore, the court concluded that T.C. would be "substantially affected by the mother's absence if she lives primarily with the father and . . . [would] be substantially affected by the father's absence if she lives primarily with the mother." The court also determined that T.C. has a strong bond with her extended family on Father's side in San Diego.

In evaluating the relationship between Mother and Father, the court noted that they, historically, had problems communicating and Mother was not supportive of Father's role in T.C.'s life. Nonetheless, the court found "it significant that the parents have gone [three] years without any need to come to court to address custody and visitation." To this end, the court emphasized that Father was happy for Mother's upcoming wedding and asked to be invited to the wedding. In addition, the court observed that Mother and

4

Father attempted to resolve the dispute about Mother's desire to move to Texas before resorting to a petition and court hearing on the issue. Based upon the improving relationship between Mother and Father, the court indicated that it believed the parents' communication between each other will continue to improve.

Regarding the reason for Mother's proposed move, the court found that Mother wanted to start a new life with her fiancé who lives in San Antonio. The court further determined that Mother plans to find full time employment after the move "by utilizing her medical assistant certificate." In addition, Mother identified a highly ranked school for T.C. to attend that is within walking distance of Mother's fiancé's home.

The court also noted that "the parents have equally shared custody of [T.C.]." Mother testified that she "would assure that [F]ather had visitation and daily phone calls with [T.C.], if the move away is granted." Although Father testified that he believed that Mother wanted to move to interfere with his ability to see their daughter, the court explicitly rejected that contention.

In addition, the court considered the financial impact of the move on the parents, the impact on the mental stability of the parents if relocation is permitted or denied, and the level of parental animosity and past conduct as an indicator of the best future arrangement. Accordingly, the court concluded the financial impact of paying for travel would affect both parents but especially Father because he was unemployed. The court found if it denied Mother's request for T.C. to move to Texas, Mother's "mental stability would be jeopardized." The court further noted that Mother had no other family in San Diego (except T.C.). However, the court also determined that Father's mental stability would be impacted if T.C. moved to Texas. Yet, the court

found that Father had "significant emotional support through his extended family" in San Diego, which would "assist . . . [F]ather emotionally, adjusting to the move, if it is granted." In contrast, the court found Mother only had the support of her fiancé if T.C. was not permitted to move to Texas.

Finally, the court emphasized the "stark difference" between the move away request Mother made in 2018 and the current one.[2] The court explained:

> "First, the request was to move 6000 miles away verses 1600 miles. The mother's attitude towards the father, his role in the child's life and the role of his other kids' lives, has changed tremendously. The biggest indicator of this is the fact that they have shared 50/50 for a very young child, beginning at 2 years old, with no litigation until the move away motion filed September 2021. Further, the mother has done whatever she needed to do to assure the visitation orders were followed, by picking up the child from wherever the father gave her direction to do so. While father was in the hospital, the mother cared for [one of Father's other children] and has gone to a few activities with [that child]. The father's 20 year-old [child] is in college. In addition, he has a 14-year-old son and a 2-year-old daughter. There was no testimony offered regarding their relationship with [T.C.]

> "The shared custody for the past three years and the lack of litigation during [that] time, causes the Court to believe that the mother has in fact changed and would assure that frequent and continuous contact with the father, takes place."

Therefore, after weighing all of the *LaMusga* factors, the court found that it was in T.C.'s best interest to allow her to relocate with Mother to San Antonio after the school year. Additionally, the court ordered Mother to pay

---

[2] In 2018, Mother petitioned the court to permit her to move to Guam with T.C.

for 100 percent of the travel costs to assure visitation orders are followed until Father finds full time employment.

Father subsequently filed a motion for reconsideration of the order granting the move away petition. Although much of the purportedly new evidence included in the motion consisted of incidents that occurred well before the February 7, 2022 hearing, Father did provide evidence that he was working full time and had been medically cleared to begin driving again.

On April 7, 2022, the superior court held a hearing on Father's motion for reconsideration. According to the minutes,[3] Father testified regarding his work and work schedule. He also pointed out that T.C. had a "ball on her ear and behind the ear [was] bruising." Father stated that his daughter told him that she had run into a pole. Mother also appeared at the hearing and addressed the court. Ultimately, the court found that Father did not present any new evidence that warranted a change in the court's previous order. As such, the court found its previous move away order to be in T.C.'s best interest.

After some procedural hiccups unimportant to the issues before us, Father timely appealed.

DISCUSSION

"We review orders granting or denying move-away requests for abuse of discretion." (*Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1598–1599; see *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*) ["The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test."]; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497 ["We review custody and visitation orders for an abuse of discretion, and

---

[3] There is no reporter's transcript of the April 7, 2022 hearing in the record. According to the minutes, a court reporter was not requested.

apply the substantial evidence standard to the court's factual findings."].) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child." (*Jacob A.*, at p. 1599.) A court also abuses its discretion " 'by applying improper criteria or by making incorrect legal assumptions.' " (*In re Marriage of C.T. & R.B.* (2019) 33 Cal.App.5th 87, 97; accord, *Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 901.) Ultimately, "[t]he test is not whether [the reviewing court] would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.' " (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595; accord, *Burgess*, at p. 32 ["The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child."].)

The applicable legal standard to address a move-away request depends on whether the relocating parent has sole or joint physical custody of the child. Here, where parents have joint custody, custody may be modified if in the child's best interests. (Fam. Code, § 3087; *Burgess*, *supra*, 13 Cal.4th at p. 40, fn. 12.) The relocating parent does not have a presumptive right to change the child's residence, and the other parent does not have to show detriment. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 363–364.) Rather, the trial court determines de novo what physical custody arrangement is in the child's best interests. (*Id.* at p. 364.)

Moreover, on appeal, we presume that a lower court's judgment or order is correct, and we indulge all intendments and presumptions in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellant, here Father,

had the burden to affirmatively show error.  Father, however, did not submit a reporter's transcript of the evidentiary hearings relating to the move-away request.  Although we appreciate the expense and difficulties in navigating the appellate process, especially for an unrepresented parent, we nonetheless cannot properly evaluate certain rulings in the absence of all relevant matters, such as all evidence and testimony before the trial court.  Thus, where "no reporter's transcript [or settled statement] has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct as to all evidentiary matters*.  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*); see Cal. Rules of Court, rules 8.130, 8.134, 8.137.)

Here, there is no clear or apparent error on the face of the move away order.  In that order, the superior court addressed the correct standards governing move away requests.  Insofar as Father challenges the sufficiency of the evidence supporting the superior court's factual findings, we must presume the unreported hearing testimony demonstrates an absence of error. (*Fain*, *supra*, 75 Cal.App.4th at p. 992.)

In addition, we are not persuaded by Father's argument that the superior court "placed too much emphasis on the father's lack of a steady job after his accident, and his inability to drive for a little while."  As shown by the thorough minute order, the court carefully considered the appropriate *LaMusga* factors and did not appear to place an exorbitant amount of weight on Father's lack of employment or ability to drive.  Indeed, the court found that the constantly changing pick-up locations issue based on the Father's inability to drive had stabilized.  Moreover, the court found that the Father's lack of driving "may provide some instability and disruption in the pattern of

9

care for [T.C.] if she [was] required to spend the night at different relatives' homes in order to assure transportation was available." We do not find these comments indicate that the court was placing too great an importance on Father's driving situation.

More importantly, the court is entitled to give whatever weight it deemed appropriate to any of the *LaMusga* factors in determining the child's best interest. (*LaMusga, supra*, 32 Cal.4th at p. 1093 ["The weight to be accorded to such factors must be left to the court's sound discretion"]; cf. *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549 ["Great deference must be given to the trial court's adjudication of the facts."].) Here, the minute order shows that the superior court thoughtfully considered each of the *LaMusga* factors as well as other relevant ones to make a reasoned decision regarding T.C.'s best interests. There is nothing in the record that raises the specter that the court abused its discretion in granting the move away petition.

Finally, Father argues the superior court erred in denying his motion for reconsideration by failing to adequately consider the new evidence presented that bolstered the *LaMusga* factors in Father's favor. We disagree.

A motion for reconsideration must be "based upon new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (a).) "If the motion to reconsider is based on new facts, the moving party must provide a satisfactory explanation for its failure to produce the evidence at an earlier time." (*Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.) We review a court's denial of a motion for reconsideration for an

10

abuse of discretion. (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408.)[4]

Below, the superior court found that "the only new information provided [in the motion for reconsideration] is that [Father] now has a driver's license and [Father's] position is that he will not have to depend on family members or an Uber or Lyft to transport the child."[5] The court also explained that this new evidence did not persuade it to change its previous order.

On appeal, Father does not directly challenge these findings or explain why the court's conclusions were unfounded. Rather, he simply refers to the court's order as "cryptic," accuses the court of minimizing "the new evidence of abuse by Mother that Father submitted,"[6] and claims the court "restated that Father had merely provided evidence of reliable transportation." Other than this cursory critique of the order, Father provides little analysis,

---

[4] "An order denying a motion for reconsideration . . . is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).)

[5] The court indicated that it "was already aware of [the] two possible jobs that [Father] testified to."

[6] It is unclear regarding to what abuse Father is referring. As best we can ascertain, he appears to be referring to Father's testimony at the hearing that T.C. "ha[d] a ball on her ear and behind the ear is bruising." The court specifically mentions this testimony in the minutes of the hearing on the motion for reconsideration. However, the court noted that T.C. told Father that she hurt her ear when she ran into a pole. Based on the minutes only (there is no transcript of the hearing), it seems the court considered the evidence but did not find it proved abuse. Put differently, the court did not minimize the evidence. It simply did not reach the conclusion that Father wanted.

11

including no citations to relevant legal authority, to support his argument that the court erred in denying the motion for reconsideration. Such an omission can result in a forfeiture of that issue here. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).)

Nonetheless, even if we consider Father's arguments on the merits, we would not be persuaded that the superior court abused its discretion in denying the motion for reconsideration. At most, Father claims to have addressed the court's concern at the February 7, 2022 hearing that he could not drive by providing evidence that he had obtained a driver's license and been cleared to drive. Yet, the court explicitly considered this new evidence and explained that it did not warrant a change to the previous order. Consequently, we cannot say that the court's order denying Father's motion for reconsideration is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

DISPOSITION

The order is affirmed. The parties are to bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.

12