Filed 4/26/16  Marriage of Fawcett CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of DAVID A. and STACEY FAWCETT. | |
| DAVID A. FAWCETT,<br><br>        Appellant,<br><br>              v.<br><br>STACEY FAWCETT,<br><br>        Respondent. | F070887<br><br>(Super. Ct. No. 689688)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Gianelli & Associates, Sarah J. Birmingham and Eric T. Nielsen for Appellant.

Law Offices of Goss & Goss, Mark A. Goss and Michael A. Goss for Respondent.

-ooOoo-

This appeal arises from a custody dispute between Stacey and David Fawcett concerning their nine- and seven-year old daughters Madison and Alyssa (collectively the girls), in which Stacey sought leave to move with the girls from Stanislaus County to Southern California.  After a trial on Stacey's move-away request, the trial court gave the parents joint legal and shared physical custody, designated Stacey as the girls' primary

caretaker, and authorized Stacey to move with the girls to Southern California. David appeals, challenging the trial court's order on several procedural and substantive grounds. He also challenges the trial court's grant of Stacey's motion to quash subpoenas he served on her medical providers by which he sought to obtain her medical records. We determine the trial court properly exercised its discretion in issuing the custody order and granting the motion to quash, and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*Family History*[1]

Stacey and David were married in November 2004; their two daughters were born in November 2006 and April 2009. During the parties' marriage, Stacey was the girls' primary caretaker, which was an arrangement the parties entered into willingly. She stayed home to raise the girls, while David worked to support the family. She was consistently involved in their extracurricular activities, school experiences and doctor visits. While David had some involvement, it was not at the same level as Stacey's.

Stacey and David separated in May 2013. Before their separation, they were preparing to move to Southern California due to a financial downturn. David's employer, the Stockton Police Department, made significant cuts and the family was struggling financially. They short-sold their home because they could no longer afford the mortgage, and began making plans to move. David was actively applying for jobs with law enforcement agencies, utilities were being put in the parents' name to help establish residency for school enrollment, and the family even moved some of their belongings in anticipation of relocation.

---

[1] Most of the following facts are taken from the trial court's tentative decision, which provided that it would become the statement of decision unless a party specified principal controverted issues to which the party was requesting a statement of decision or made proposals not included in the tentative decision. While David subsequently filed objections to the tentative decision, the parties appear to agree that the tentative decision ultimately became the trial court's statement of decision.

Both parties have family and a support network in Southern California. Stacey's family owns a business, which would allow her to work a flexible schedule so she could continue as the girls' primary caretaker and explore her own educational options. Both Stacey's and David's families could assist with child care, if needed. The only remaining unmet contingency to their move was David securing employment.

Before they finalized their move, however, Stacey and David separated. In discussing a potential trial separation, David claimed Stacey wanted him to be able to spend time with the girls, telling him that he could come down and see the girls on his four-day weekends. At that point, David determined the move was no longer in his best interests, given the seniority he had earned at the Stockton Police Department, and the department's willingness to accommodate his needs and schedule. He feared that starting over at a new department would mean a loss of seniority and flexibility, and make it harder to work out a desirable custody schedule.

*Child Custody Proceedings and Move-Away Request*

David filed a petition for dissolution in May 2013. He requested child custody and temporary emergency orders that he and Stacey have joint legal and shared physical custody, and Stacey not be allowed to take the girls outside Stanislaus County. The trial court issued an emergency order preventing Stacey from taking the girls outside the county.

In June 2013, Stacey filed for a move-away evaluation, as she wanted to move to Southern California. She also filed a responsive declaration objecting to David's requests for an equal, shared parenting plan, and that she not be allowed to leave Stanislaus County with the girls.

Following a hearing in June 2013, the trial court issued temporary custody and visitation orders, which were based on the parties' agreement. The trial court referred the parties to a private court-appointed evaluator for a family court investigation and move-

3.

away evaluation; gave the parties joint legal and physical custody, with neither designated as the primary caretaker; and set a near 50-50 custody plan.

The child custody evaluator completed her investigation and issued a report in October 2013. The evaluator concluded that both Stacey and David appeared to be loving, attentive and nurturing toward the girls, who had positive emotional bonds with each parent, and the girls appeared to be safe in the care of both parents. The evaluator found that Stacey's desired move appeared to be in good faith and she did not make the move-away request to thwart David's relationship with the girls. Assuming the move would occur, the evaluator recommended the parties have joint legal, shared physical custody, with Stacey designated as the primary caretaker, and the girls be allowed to relocate with Stacey to Glendora, California. The evaluator proposed a time share schedule.

David contested the recommendation and trial on the move-away request was conducted over 11 days extending from April 30, 2014 to July 31, 2014. Eleven witnesses testified, including the evaluator and an expert David called to review the custody evaluation report. After the parties submitted closing briefs, the trial court took the matter under submission and in November 2014, issued a written tentative decision granting the move-away request.

David filed objections to the tentative decision, as well as a motion for a new trial. At a January 2015 hearing, the trial court denied the new trial motion. The trial court subsequently imposed the custody and visitation order stated in its tentative decision.

*The Tentative Decision*

In the tentative decision, the trial court explained that a de novo best interest of the child standard applied because the parties had stipulated that was the appropriate standard. The trial court noted this standard appeared to be appropriate given the nearly 50-50 custody plan that was in place. The trial court found it was in the girls' best interest to permit them to move to Southern California with Stacey, as the girls were

4.

accustomed to Stacey acting as their primary caretaker and Stacey appeared more likely to communicate with David concerning the girls' daily needs. In so finding, the trial court stated: "If the Court could keep the status quo, it would. But it can't. Given [Stacey]'s stated intention to move to Glendora, California, the Court must make a custody determination that would be least disruptive, and provide the best continuity of attention, nurturing, and care that the children have grown accustomed to."

The trial court also found that Stacey's relocation plan was motivated by legitimate reasons, not a desire to reduce the girls' time with David. The trial court explained that while David had presented some evidence, in the form of Stacey's text messages and statements, that her motive for moving was to reduce the amount of time he would have with the girls, the evidence indicated the parties decided to move long before Stacey made these statements, as the parties had taken steps to move to Southern California before their separation. The trial court found that although David ultimately decided not to relocate, his change of plans did not make Stacey's refusal to alter hers a bad faith decision, particularly in light of the fact that the parties' separation heightened her need for a secure support system and flexible employment.

The trial court adopted the evaluator's recommendations contingent on Stacey's relocation, and stated it would prepare new custody orders consistent with those recommendations, which would constitute a final judicial determination that would require a showing of a material change of circumstances for future modifications. The trial court further ordered that if Stacey elected to stay in Stanislaus County, the July 2013 custody orders would remain in effect, her election to stay would constitute a change in circumstances, and the parties could then file a request to modify the custody order without further demonstration of changed circumstances.

*The Custody Order*

In its permanent order, the trial court granted joint legal and shared physical custody to Stacey and David, with Stacey designated as the primary caretaker. The girls

were allowed to relocate with Stacey to Glendora, California. If the parties could not agree on a custody schedule, the trial court ordered the following schedule: (1) Stacey would have custody on alternate weekends from Friday at 5 p.m. to Sunday at 5 p.m.; and (2) if David visited the girls in Southern California and ensured they attended school, he would have custody on alternate weekends from Thursday at noon until Sunday at 5 p.m., but if he chose to visit them in Oakdale, California, he would have custody from Friday at 5 p.m. to Sunday at 5 p.m. The trial court also established a custody schedule for holidays.

## DISCUSSION

In a move-away case where, as here, the trial court is rendering a permanent physical custody order for the first time, the trial court makes a de novo decision based on the best interests of the child under all the circumstances.[2] (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32, 40 (*Burgess*); *Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124–1125 (*Mark T.*).) The court has wide discretion to choose a parenting plan and resolve the move-away issue in a manner that advances the best interests of the child, considering such factors as the child's health, safety and welfare; any history of abuse by a parent; and the nature and amount of contact with both parents. (Fam. Code, § 3011;[3] *Mark T., supra,* at p. 1125.) Unlike a parent moving to modify a *final* custody order, a parent moving to change a temporary custody order need not prove changed circumstances and there is no presumption that the existing custody arrangement is the

---

[2] This standard applies as long as the court has not yet made a permanent custody determination. "A custody order based on a stipulation of the parties does not constitute a final, existing judicial custody determination unless 'there is a clear, affirmative indication the parties intended such a result.' " (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 19 (*F.T.*) [finding no such intent].) The parties agree that the de novo standard applies in this case.

[3] Undesignated statutory references are to the Family Code.

appropriate one. (*F.T.*, *supra*, 194 Cal.App.4th at pp. 14-15; see *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1078 (*LaMusga*); *Burgess*, *supra*, 13 Cal.4th at p. 38.)

In applying the best interests analysis in a proposed move-away situation, our Supreme Court has held the trial court must consider the factors listed in section 3011, and all other relevant factors, including "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

In a move-away case where the parents have temporary or permanent joint physical custody of the child, the moving custodial parent need not show the move is necessary, and the nonmoving custodial parent need not show changed circumstances or detriment to the child; rather, the inquiry focuses on the child's best interests. (*Mark T., supra,* 194 Cal.App.4th at pp. 1125–1126.) "The value in preserving an established custodial arrangement and maintaining stability in a child's life is obvious. But when the status quo is no longer viable and parents have joint custody, a court must review de novo the best interest of the child. It can fashion a new time-share arrangement for the parents." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364 (*Niko*).) "In other words, the de novo review that applies in a joint parenting situation is, 'in effect a "reexamintion" of the basic custody arrangement' because one parent's relocation in a joint physical custody arrangement will necessarily disrupt the status quo, and will require the court to modify the existing custody arrangement." (*Mark T.*, *supra*, 194 Cal.App.4th at p. 1126.)

On appeal, we review orders granting or denying move-away requests for abuse of discretion. (*Mark T., supra,* 194 Cal.App.4th at p. 1124.) "A trial court abuses its discretion if there is no reasonable basis on which the court could conclude that its decision advanced the best interests of the child." (*Ibid.*) "A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Id.* at pp. 1124-1125.) On factual issues, we draw all reasonable inferences in support of the trial court's ruling and defer to the trial court's express or implied findings when supported by substantial evidence. (*Niko*, *supra*, 144 Cal.App.4th at pp. 364-365; *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 548.)

We review the trial court's rulings on the admissibility of evidence for an abuse of discretion. (*In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525.) A party challenging a trial court's evidentiary rulings must demonstrate both an abuse of discretion and a consequent miscarriage of justice. (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456.) To the extent the trial court's evidentiary rulings depend on the proper construction of a statute, however, the issue is a question of law which we review de novo. (*Zhou v. Unisource Worldwide Inc.* (2007) 157 Cal.App.4th 1471, 1476.)

With these principles in mind, we address David's contentions.

I.      The Exclusion of Evidence of Stacey's Intent to Stay

David first contends that the trial court erred when it prevented him from presenting evidence that Stacey intended to remain in Stanislaus County if her request to move with the girls was denied.

During the cross-examination of the evaluator at trial, David's attorney asked the evaluator to confirm that when the evaluator asked Stacey what schedule she would like for the girls if they remained in Oakdale and she moved to Southern California, Stacey

responded that she then most likely would stay in Stanislaus County. Stacey's attorney objected on relevancy grounds, stating that was not something the evaluator could consider in conducting a move-away evaluation. A lengthy exchange ensued between the attorneys and the trial court, which culminated in the trial court sustaining the relevance objection. David also attempted to submit, as an exhibit, proposed modifications to the July 2013 custody order, with the parties continuing to share joint physical custody, based on the assumption that the girls and Stacey would remain in Stanislaus County. The trial court rejected the exhibit as irrelevant, since it was required to assume Stacey had already moved for purposes of the trial.

When a parent makes a move-away request, the ultimate question is what custody arrangement would be in the child's best interest if and when the parent moves. (*F.T.*, *supra*, 194 Cal.App.4th at p. 22.) Therefore, when considering a parent's request to relocate the child, the trial court must decide the custody issue premised on the assumption that the parent *will* relocate; the issue is not whether the parent should or may be permitted to relocate, but " 'what arrangement for custody should be made' " *when* the parent moves. (*Mark T.*, *supra*, 194 Cal.App.4th at p. 1126 [addressing a request to relocate in the context of an initial custody determination]; *F.T.*, *supra*, 194 Cal.App.4th at p. 22.) Even if the parent will not move if the result is a loss of custody, our Supreme Court has noted: "[T]he Family Code provides no ground for permitting the trial court to test parental attachments or to risk detriment to the 'best interest' of the minor children, on that basis. Nor should either parent be confronted with Solomonic choices over custody of minor children." (*Burgess*, *supra*, 13 Cal.4th at p. 36, fn. 7.) [4]

---

[4] David contends this reasoning only applies to a custodial parent's request to relocate with the children apparently because in *Burgess*, mother had sole physical custody of the children under a temporary custody order and father argued that "most custodial parents seeking to relocate are merely 'bluffing[.]' " (*Burgess*, *supra*, 13 Cal.4th at pp. 29 & 36, fn. 7.) As we explain, it is clear from subsequent case law that even in joint custody move-away cases, it is improper for the trial court to assume that a

9.

Thus, "when the trial court is faced with a request to modify the existing custody arrangement on account of a parent's plan to move away (unless the trial court finds the decision to relocate is in bad faith), the trial court must treat the plan as a serious one and must decide the custody issues based upon that premise." (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1205-1206 (*Ruisi*).) If a trial court is concerned that the parent may not actually intend to move away, the court can make its custody determination effective on the parent's move. (*F.T.*, *supra*, 194 Cal.App.4th at p. 22.) Such a conditional order does not render it an advisory opinion. (*Ruisi*, *supra*, 53 Cal.App.4th at p. 1206.) This is because "[i]t is neither practical nor in the best interest of the child to require a parent to move first, and seek permission and modification after the fact. Therefore, the law allows a court to conduct a hearing based on the *intention* to move and make a custody order conditioned on the move being effectuated." (*Niko*, *supra*, 144 Cal.App.4th at p. 365.)

Based on these authorities, the trial court here determined that it was required to assume that Stacey had moved to Southern California when deciding the appropriate custody arrangement. Since the inquiry in move-away cases is what custody arrangement is in the children's best interest assuming the parent has moved, what Stacey would have done if the trial court awarded David primary custody of the girls was irrelevant to any issue before the court. Since only relevant evidence is admissible (Evid. Code, § 350), the trial court did not abuse its discretion when it excluded evidence of Stacey's intent should it place the girls with David as primary custodian.[5]

_____

parent will not move if the trial court's decision will result in a loss of custody. (*Mark T.*, *supra*, 194 Cal.App.4th at pp. 1127-1128.)

[5] In his reply brief, David contends that none of the move-away cases support the trial court's exclusion of evidence because they do not address or discuss the issue of whether evidence of a parent's intent if his or her move-away request was denied should be excluded at trial. In *Mark T.*, however, the appellate court did note that it was improper to ask a parent, who requested to relocate with her child, whether she would move if the court were to deny her request, and therefore the parent should not have had

10.

David raises a number of arguments that he contends show the relevancy of Stacey's intent. First, he contends that because the trial court was required to look at all the circumstances bearing on the child's best interest, including the factors stated in section 3011, it was also required to consider Stacey's intent should the girls be placed with David. But as we have already explained, the trial court was not to consider or test whether Stacey would move to Southern California; instead, it was required to assume Stacey was moving in deciding whether it was in the girls' best interest to relocate with Stacey and visit David, or remain in Stanislaus County with David and visit Stacey. (*Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1600 (*Jacob A.*); *Mark T.*, *supra*, 194 Cal.App.4th at p. 1127.) Therefore, Stacey's intent was not a circumstance for the trial court's consideration.

David attempts to draw a distinction between *assuming* a parent will not leave without their children and *knowing* a parent will not leave without them. He asserts that by excluding evidence that Stacey actually intended to remain in Stanislaus County if the girls were not placed with her in Southern California, the trial court did not review "accurate evidence" as to the girls' circumstances if they remained in Stanislaus County.

The distinction, however, is not a proper one, as in either instance it leads to the same impermissible legal analysis, namely an inquiry into whether a parent actually will move. (*Jacob A.*, *supra*, 196 Cal.App.4th at pp. 1602-1603; *Mark T.*, *supra*, 194

to respond to that question. (*Mark T.*, *supra*, 194 Cal.App.4th at p. 1129.) Moreover, even if none of the cases address evidentiary issues, they clearly state that it is improper for the trial court to consider a parent's intent should the trial court deny his or her move-away request. Since such consideration is improper, it follows that it is also improper to admit such evidence, as it serves no relevant purpose. We note that David contends these cases are all distinguishable because they either involve post-judgment custody modification requests or initial custody determinations involving a custodial parent, which require a different standard of review. He fails to explain, however, how these different factual scenarios negate the rationale behind the rule prohibiting consideration of a parent's intent should his or her move-away request be denied.

11.

Cal.App.4th at p. 1129.)  Such an inquiry is impermissible, regardless of whether the parent has admitted that he or she will not relocate without his or her child.  For example, in *Mark T.*, mother, who had joint physical custody of her child with the child's father, asked the court, before entry of a permanent custody order, to permit her to relocate the child's residence from San Diego to Minnesota.  (*Mark T.*, *supra*, 194 Cal.App.4th at p. 1119.)  The trial court denied mother's relocation request and retained the physical custody arrangement the parties previously had agreed to, namely mother having primary physical custody, on the apparent assumption that mother would not move to Minnesota if the court denied her request.  (*Ibid.*)

The appellate court concluded that the trial court abused its discretion by misapplying the pertinent legal standards in the context of a move-away request, as the trial court was required to proceed on the assumption that the parent would in fact move and, on that basis, fashion a custody order that was in the minor's best interest.  (*Mark T.*, *supra*, 194 Cal.App.4th at pp. 1119-1120.)  In reaching this conclusion, the appellate court noted it was clear from mother's testimony in response to father's attorney's question of whether she would move if the court were to deny her request to relocate the child's residence, that she did not want to move if the court would not allow the child to relocate with her.  (*Id.* at p. 1129.)  The appellate court explained that this was an improper line of inquiry, since the trial court should not have considered whether or how mother might alter her relocation plan depending on how the court ruled:  "As stated earlier, the court was required to presume that [mother] would, in fact, be moving, and should have made its custody determination based on that premise.  [Mother] should not have had to respond to this question, and the court should not have considered her response, as it did when it expressly noted in its statement of decision that [mother] had

12.

effectively conceded that she would not move to Minnesota if her move away request was denied." (*Ibid.*) [6]

It is also improper for a trial court to assume or believe that a parent will not relocate without his or her child. As the appellate court explained in *Jacob A.*, a case in which the trial court, the minor's counsel, and the mediator all assumed mother would stay in California unless the minor was permitted to relocate with her: "On remand, the trial court shall bear in mind that whether the minor's counsel, the mediator, or it believes mother will not move without the child, is legally irrelevant. Mother has a right to move and she has decided to move; that is the premise from which the legal analysis must begin. Moreover, when issuing its decision, the trial court is reminded that it has no authority to issue an order for the purpose of coercing mother into abandoning her plans to relocate. [Citation.] [¶] In conclusion, the issue raised by mother's motion to relocate with the minor child is thus: Mother is moving to Washington. Is it in the minor's best interests to relocate with mother and visit father, or to remain in California with father and visit mother? Once that question is answered, the court must devise an appropriate parenting schedule." (*Jacob A.*, *supra*, 196 Cal.App.4th at pp. 1602-1603.)

There is simply no distinction between actual and assumed knowledge of a parent's intent – in either case, the issue is the same: the trial court is not allowed to inquire or consider whether a moving parent would relocate if the trial court did not grant the move-away.

David next contends the trial court failed to compare the girl's actual living situation if the move-away was granted with their actual living situation if the move-

---

[6] David argues *Mark T.* is distinguishable from the instant case because father there had only 30% custody, not equally shared custody as in this case, and there is nothing in the opinion to show mother actually intended to remain if the move was denied. We fail to see how the difference in the amount of custody would require a different result and, as we have set forth, mother in *Mark T.* did testify that she did not want to move if her request to relocate with her child was denied.

13.

away was denied.  In support, he cites *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, which he asserts shows that trial courts "consistently review alternative living situations for children in making initial custody determinations."  This case, however, does not support his contention.  In *Condon*, the trial court considered who would have primary physical custody of the children if their mother moved to either France or Australia, and decided that mother would if she moved to Australia, but father would if mother moved to France.  (*Id.* at p. 540.)  In making its decision, the trial court did not consider what mother would do if it had ordered the children to remain with father under both scenarios.

David's real complaint seems to be that, by failing to consider Stacey's actual intent should her move-away request be denied, a second trial would be required to establish a permanent custody order should the trial court award primary physical custody to David and Stacey decide not to relocate.  Pointing to the trial court's statement, made during the discussion of the admissibility of the evidence of Stacey's intent, that if Stacey decided not to move the parties could go to mediation to discuss what was wrong with the July 2013 order, David argues the trial court created a "completely new rule in which parents would have a 'two trial' initial custody determination when one parent was also seeking a move-away[.]"  David asserts that under this "unprecedented approach," the first trial would focus on the move-away request while the second would decide whether to order a shared custody plan in the original county if the parent decided not to move.  He further asserts that this "new rule" would prevent the parties from having a "final judicial custody determination" if Stacey's move-away request was denied.

David's arguments are meritless.  As we have already explained, the issue before the trial court was whether it was in the girls' best interest to relocate with Stacey to Southern California or remain with David in Stanislaus County.  In deciding that issue, legally the trial court could not consider what Stacey would do if it awarded primary physical custody to David in Stanislaus County.  While a trial court may issue a

14.

conditional custody modification if the parent does not actually move, it may not do so for the purpose of coercing a parent into abandoning plans to relocate.  (*Ruisi*, *supra*, 53 Cal.App.4th at p. 1206; *F.T.*, *supra*, 194 Cal.App.4th at pp. 22-23.)  In excluding the evidence of Stacey's intent should her move-away request be denied, the trial court was not creating a new rule, but was following consistent precedent that it may not consider such evidence.

While David complains there would not have been a "final judicial custody determination" if the trial court had denied Stacey's move-away request, we disagree.  If the trial court had found it was in the girls' best interest to remain with David, it would have denied Stacey's motion and the final order would have given David primary physical custody, while Stacey would receive weekend visits.  It is possible the trial court would have ordered, as it did here, that the July 2013 custody order would remain in effect if Stacey decided to remain in Stanislaus County, which could then be modified, but this does not mean that its order was not a final one.  Moreover, it is entirely speculative that a new trial would be required if Stacey elected to stay in Stanislaus County, as the trial court characterized the problems with the July 2013 custody order that David's attorney identified below as "pretty minor stuff."

Noting that in the present case he and Stacey shared joint physical custody when Stacey requested to move away with the girls, David asserts the trial court incorrectly applied "Footnote 12" of *Burgess*, which cites to section 3087.  He argues that, under the language of that footnote, the trial court was required to first determine whether the shared custody order should be modified or terminated, and conduct a de novo review of which parent should be awarded primary physical custody only if it determined that the order should be modified.[7]  He asserts that the trial court here did the opposite, as it first

---

[7] Footnote 12 states: "A different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children.  In such cases, the custody order 'may be

15.

decided whether to allow the move and stated it would consider a shared custody plan only if Stacey failed to move. He asserts this was error because the trial court failed to consider whether the girls' best interest required modification or termination of the current custody order. David's argument falls flat because, as he is quick to point out in his opening brief, the trial court was making an initial permanent custody order, not modifying an existing order.

Finally, David contends Stacey's intent was relevant to evaluating whether her request to move was made in bad faith. "[A] finding that a reason for a proposed move constitutes bad faith 'may be relevant' in determining custody arrangements." (*LaMusga*, *supra*, 32 Cal.4th at p. 1100.) A custodial parent acts in bad faith when the parent decides to relocate simply to frustrate the noncustodial parent's contact with the child. (*Id.* at p. 1099.) "Even if the custodial parent has legitimate reasons for the proposed change in the child's residence and is not acting simply to frustrate the noncustodial parent's contact with the child, the court still may consider whether one reason for the move is to lessen the child's contact with the noncustodial parent and whether that indicates, when considered in light of all the relevant factors, that a change in custody would be in the child's best interests." (*Id.* at p. 1100.)

That Stacey would not actually move if the trial court denied her request to relocate the girls with her to Southern California does not factor into the bad faith analysis, as this does not mean that her request to move was made in bad faith. To

modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order.' (Fam. Code, § 3087.) The trial court must determine de novo what arrangement for primary custody is in the best interest of the minor children." (*Burgess*, *supra*, 13 Cal.4th at p. 40, fn. 12.) The analysis the Court was contrasting this with is that which applies when a parent with sole physical custody under an existing judicial custodial order seeks to relocate. In that circumstance, it is the noncustodial parent's burden to persuade the trier of fact that a change in custody is in the child's best interest. (*Id.* at pp. 37-40.)

conclude otherwise would frustrate the purposes of the rule prohibiting the trial court from considering whether Stacey would alter her plan to relocate depending on how it ruled. Instead, in determining bad faith, the trial court properly considered whether Stacey had legitimate reasons for the proposed change in the girls' residence and whether she was acting simply to frustrate David's contact with them, and found she was not acting in bad faith.

In sum, David has not shown that the trial court abused its discretion or otherwise erred in excluding the evidence of Stacey's intent should the trial court have awarded primary physical custody to David.

II.     The Appropriate Legal Standard

David contends the trial court failed to apply the correct legal standard in making its custody decision. He asserts it is apparent from the trial court's discussion of the law in its tentative decision that it considered Stacey to be the custodial parent and accordingly, it believed its role was to determine whether custody should be changed to him. He also asserts the trial court incorrectly placed the burden of persuasion on himself instead of Stacey, and incorrectly believed it could not preserve the status quo.

As we have already stated, the proper standard to be applied where, as here, the trial court is considering a parent's request to relocate the child in the context of an initial custody determination, is for the trial court to decide de novo what physical custody arrangement would be in the child's best interest, assuming the requesting parent will relocate. (*Mark T.*, *supra*, 194 Cal.App.4th at p. 1127.) This was the standard the trial court applied here. The trial court explained in its tentative decision that, pursuant to the parties' stipulation, it was to perform a de novo review. The tentative decision does include statements of law that are applicable to a custodial parent's request to relocate, such as that the trial court must take into account a custodial parent's presumptive right to change the child's residence, citing *Burgess*, and that the trial court "must decide whether, in light of Mother's stated intention to move to southern California, a change of

17.

custody would be in the children's best interest." From these statements, David contends the trial court utilized the standard applicable to cases involving a custodial parent, not that of parents with joint custody.

The remainder of the tentative decision, however, indicates that the trial court applied the best interest standard on a de novo basis. The court stated it had broad discretion and was required to look to all the circumstances bearing on the girls' best interest, including the mandatory factors of section 3011. After reviewing those factors, it stated that given Stacey's intention to move to Glendora, California, it "must make a custody determination that would be least disruptive, and provide the best continuity of attention, nurturing, and care that the children have grown accustomed to[,]" and decided that, given their being accustomed to Stacey acting as their primary caretaker, the evaluator's custody plan would enable Stacey to continue in that role. The trial court also considered which parent would more likely allow the girls frequent and continuing contact with the "non-custodial" parent, and determined that was Stacey. The trial court utilized the correct legal standard.[8]

David also contends the trial court failed to give weight to the parties' equal shared physical custody plan in place at the time of trial, citing *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 143 (*Whealon*). The trial court, however,

_____

[8] David raised this issue in his new trial motion. In denying the motion, the trial court explained: "Counsel suggests that my reliance on *Burgess* is misplaced. I disagree. The standard I did apply in this case was a de novo standard. In fact, I think I stated so in my tentative decision. [¶] And that while I did spend a bit of time in my decision discussing *Burgess*, and at the first paragraph on page three, I note that the parties have stipulated to a de novo review of the evidence. And I indicated that I also believed that to be appropriate given the near 50/50 custody plan that's currently in place. So I did not assign Mr. Fawcett the burden of persuasion – or the burden of proof in this case. This was a de novo review based on the evidence that was presented to me." After explaining that the parents were wonderful parents and this was the hardest decision it had made as a family court judge, the trial court asserted that it "certainly didn't place the burden on Mr. Fawcett. I tried to look at the evidence from the perspective of a de novo review."

18.

absolutely considered the shared custody plan when it found that while Stacey had been the primary caretaker during the marriage, David had actively engaged in the girls' lives due to the 50-50 custody plan. Nevertheless, the trial court found that the girls were closer to Stacey and were accustomed to her acting as their primary caretaker, noting that David himself admitted that the girls were close to Stacey and would probably go to her first if the parents were together. This finding was well within the trial court's discretion.

David argues the trial court placed the burden of persuasion on him. In support, he cites cases that involve a parent who had sole custody. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 536 [where custody has been lawfully acquired and maintained for a significant period, the effect is to compel the noncustodial parent to assume the burden of persuading the trier of fact that a change in custody is in the child's best interest]; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 592 [burden on father to show good cause to disturb the status quo where the change in custody he sought would have taken the child from the only home she had ever known and relocated her cross-country to a strange household in a state where her mother had no ties].) In that situation, the custodial parent who requests to move away has a presumptive right to do so, and the burden rests on the non-moving parent who is seeking to change custody. (*Whealon*, *supra*, 53 Cal.App.4th at pp. 141-142.)

But in joint custody cases, the trial court determines de novo what arrangement for primary custody is in the child's best interest, in effect reexamining the basic custody arrangement. (*Whealon*, *supra*, 53 Cal.App.4th at p. 142.) The joint custody moving parent does not have the presumptive right to change the child's residence and bears no burden of proving the move is essential, while the nonmoving parent does not bear the burden of showing that changed circumstances require a change in custody or the move will be detrimental to the child. (*Niko*, *supra*, 144 Cal.App.4th at pp. 363-364.) There is nothing in the trial court's tentative decision to indicate it improperly placed the burden on David to show either changed circumstances or detriment.

David asserts that the trial court could have issued a decision which would have maintained the status quo and led to Stacey remaining in Stanislaus County, citing *Cassady v. Signorelli* (1996) 49 Cal.App.4th 55 (*Cassady*). In that case, the appellate court found the trial court did not abuse its discretion in issuing an order which prevented mother from moving her child from the Bay Area to Florida, since it would be in the child's best interest to continue the present joint custody arrangement in California, with visitation and a continued relationship with father. (*Id.* at p. 61.) David asserts that because the trial court legally could maintain the status quo, it did not understand its discretion in this regard, as it stated in its tentative decision that "[i]f the Court could keep the status quo, it would. But it can't."

It was not error for the trial court to admit that it could not maintain the status quo. When a parent with joint custody wishes to relocate, the status quo is no longer viable; the trial court certainly could not maintain the status quo here with Stacey living in Southern California and David living in Stanislaus County. (*Niko*, *supra*, 144 Cal.App.4th at p. 364; see also *Jacob A.*, *supra,* 196 Cal.App.4th at p. 1601 [". . . we cannot conceive of a plan that would maintain the status quo with mother living in Washington and father living in California. Rather, by issuing such an order, the trial court effectively prohibited mother from moving, which is an abuse of the court's discretion"].) As we have already explained, while Stacey may have intended to remain in Stanislaus County should her request be denied, the trial court could not consider this in determining custody.

Moreover, *Cassady* does not stand for the proposition that a trial court can force a parent to stay in order to maintain the status quo. While the trial court in *Cassady* framed the issue as whether mother should be permitted to move and adhered to a "need" test to evaluate her plan to move, the trial court found mother's desire to move was intended simply to frustrate father's relationship with the child, which is an exception to the rule of *Burgess* that a custodial parent need not establish the necessity for a proposed move.

20.

(*Ruisi*, *supra*, 53 Cal.App.4th at p. 1206, fn. 6 [distinguishing *Cassady* on this basis.) Moreover, in *Cassady*, the appellate court upheld the trial court's discretionary decision to disallow mother's request to move the child's residence because it was supported by substantial evidence and within the trial court's discretion. (*Cassady*, *supra*, 49 Cal.App.4th at p. 59.) Thus, the decision in a move-away case is entrusted to the trial court's sound discretion and must not be set aside unless it is not supported by substantial evidence or is otherwise an abuse of discretion. (*In re Marriage of Edlund* (1998) 66 Cal.App.4th 1454, 1470, fn. 7.) The trial court did not abuse its discretion when it found that it could not maintain the status quo.

Finally, David contends the trial court abused its discretion in relying on the evaluator's evaluation and recommendation because the evaluator did not render her opinion based on the law applicable to initial custody determinations where there is a joint physical custody order.

During the evaluator's cross-examination at trial, David's attorney asked the evaluator about a three-page document the evaluator produced at her deposition, which she had received from another evaluator around July 2010.[9] The evaluator testified that she looks at this document during her evaluation of a move-away case to ensure she is hitting the right issues, and uses it as a guideline regardless of whether the evaluation involves an initial custody determination or a modification, or whether there is a joint custody or sole custody order. The evaluator further testified she looks at the factors listed in the document to see what to include in the report and the areas to examine.

---

[9] The document contains a recitation of the case law regarding move-away cases, including a discussion of the standard applicable to a custodial parent who is moving away, and explains the court's analysis in such cases. It also lists move-away cases since *Burgess*; it specifically lists the *Niko* case and states that in that case, the court approved the application of the best interest standard and de novo review where parents had joint custody with a 50/50 time share. The document also lists the factors identified as significant in *Burgess* and *LaMusga*.

David presumes that because the evaluator looked at this document and the document contains law regarding a court's analysis of a custodial parent's move-away request, the evaluator actually used this law in her evaluation. David, however, does not point to anywhere in the actual evaluation where the evaluator did so. Accordingly, he has failed to show error. Moreover, as we have already explained, the trial court, which makes the ultimate findings of fact, utilized the proper standard.

III.     Imposing a "De Facto" Move

David argues the trial court improperly imposed a "de facto" move on him because he would need to move to Southern California in order to exercise any significant visitation or custody of the girls. He asserts that because the trial court's order grants him four days of visitation with the girls every other week in Southern California, but only two days every other week if he visits the girls in Stanislaus County, the trial court essentially ordered him to move so he could exercise significant custodial time with the girls.

The only case David cites in support his contention is *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575 (*Fingert*), which he asserts stands for the proposition that the court cannot require a parent to relocate in order to maintain custody of his or her children. There, a custody dispute arose between mother, who was the primary custodial parent of a six-year-old child and lived with him in Northern California, and father, who lived in Ventura County and had visitation. The trial court ordered the child's residence to be in Ventura County and that father financially assist mother to move back there, which it acknowledged would force mother to either move to Ventura County or give up custody of her child. (*Fingert*, *supra*, 221 Cal.App.3d at p. 1577.)

The appellate court held that mother could not be required to relocate to Ventura County in order to facilitate father's visitation or lose custody. (*Fingert*, *supra*, 221 Cal.App.3d at p. 1577.) Noting that the trial court did not even make a provision for visitation by mother should she choose not to move, the appellate court concluded the

22.

trial court relied on impermissible factors in making its decision, such as father's superior economic position. (*Id.* at p. 1580.) The appellate court further explained that courts cannot order individuals to move to and live in a community not of their choosing, and therefore mother could not be ordered to choose between her right to live where she chose and retaining custody of her child. (*Id.* at p. 1582.)

The custody order in this case is a far cry from that in *Fingert*. David was not ordered to move to Southern California or lose custody of the girls. Instead, Stacey was given primary custody and David was given visitation. Although that visitation would be greater should he choose to visit the girls in Southern California, that does not require him to move there. As the evaluator noted in her evaluation, David has family in Southern California with whom he could stay when he visits the girls, and he has four days off from his job on alternate weekends. The trial court did not abuse its discretion in granting David more visitation should he visit in Southern California and its order does not require him to relocate.

For the first time in his reply brief, David raises additional complaints concerning the trial court's rejection of his requests to be awarded visitation for all three-day weekends during the school year and increased visitation during school breaks and summer vacation. We do not consider arguments raised for the first time in a reply brief. (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.)

IV.     The Motion to Quash

Finally, David contends the trial court erred when it granted Stacey's request to quash his subpoenas of her medical records. We review discovery orders for an abuse of discretion, and it is an appellant's burden to establish such an abuse. (*Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 366.)

Before trial, Stacey filed a request for an order to quash deposition subpoenas that David served on the custodian of records for three of Stacey's medical providers, by

23.

which he sought Stacey's medical records from January 1, 2006 to the present. Stacey argued the records were protected by the physician-patient privilege, which she had not waived. David opposed the motion, arguing that Stacey had waived the privilege because she provided a copy of her medical records to the evaluator, and she had previously disclosed to him that she struggled emotionally with raising children and sought help from a doctor for this issue, and had been diagnosed with depression and prescribed medication to treat it.

Following a hearing on the motion, the trial court granted Stacey's request. The trial court found: (1) Stacey did not place her medical condition at issue by providing a copy of her records to the evaluator, but instead she was responding to an issue that David raised first; (2) Stacey did not waive the physician-patient privilege by her past statements to David; and (3) there was no compelling state interest in invading Stacey's constitutional right to privacy in this case.

On appeal, David contends that the trial court erred in finding that Stacey did not waive the privilege as to her medical records. He argues that because Stacey shared her medical records with the evaluator, she waived any privilege as to the medical information contained therein. In support, he cites *Los Angeles Gay and Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 309, in which the Court of Appeal explained that a waiver of the physician-patient privilege "occurs if the person holding the privilege, without coercion, discloses a significant portion of the communication or has consented to disclosure[,]" and *People v. Combs* (2004) 34 Cal.4th 821, 864, in which our Supreme Court held that a defendant waived the psychotherapist-patient privilege by placing his mental state in issue, thereby allowing the prosecutor to call as a rebuttal witness a psychiatrist who had interviewed the defendant at defense counsel's request and produced a report, and to question him about his report.

In making his argument, however, David utterly fails to address the trial court's findings on this issue. The trial court specifically found that Stacey did not place her

medical condition at issue, and therefore did not waive the physician-patient privilege by providing a copy of her records to the evaluator, as she had done so only because David had first placed her medical condition at issue in his May 2013 request for order. Citing the law that a defendant does not tender his or her medical condition by denying the plaintiff's allegations regarding that condition (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1149 (*Manela*)), the trial court held that Stacey's denial and evidence offered in support thereof did not constitute a waiver of the physician-patient privilege. (See also *Koshman v. Superior Court* (1980) 111 Cal.App.3d 294, 298 [holding that the patient-litigant exception to the physician-patient privilege did not apply in custody dispute where father, who had moved to modify a custody order on the ground that mother was hospitalized due to an overdose of narcotics, sought medical records related to that hospitalization, as mother did not tender the issue of her alleged overdose].) Because David does not explain why the trial court's finding is erroneous, he has failed to meet his burden of showing an abuse of discretion.

David also contends the trial court erred in failing to compel disclosure of Stacey's medical records because a compelling state interest outweighs her right to privacy, citing *Manela*. While a person has the right to maintain the privacy of his or her medical records, this right is held *in addition* to the statutory physician-patient privilege of Evidence Code section 994. (Weil & Brown, et.al., Cal Prac. Guide: Civ. Pro. Before Trial (The Rutter Group 2015) § 8:307.5.) Thus, where medical records are protected by the physician-patient privilege, we need not reach the issue of whether a party's right to privacy also protects those records. (*Manela*, *supra*, 177 Cal.App.4th at p. 1150 & fn. 7 [because certain medical records of a father seeking joint custody of his son were protected by the physician-patient privilege, the Court of Appeal did not reach the issue of whether his right to privacy also protected those records, including whether a compelling state interest outweighed any privacy right].)

25.

## **DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to Stacey.


_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.

26.