Filed 8/21/25  Marriage of Wesley P. and Lauren P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of WESLEY P. and LAUREN P. | D083109 |
| WESLEY P., | |
| Respondent, | (Super. Ct. No. D559130) |
| v. | |
| LAUREN P., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Euketa Oliver, Judge.  Affirmed.

Lauren P., in pro. per., for Appellant.

Wesley P., in pro. per., for Respondent.

Lauren P. (Mother) appeals an order granting Wesley P.'s (Father) petition to move their minor child, I.P., out of state.  Mother contends that the family court: (1) improperly analyzed factors applicable to move-away petitions; (2) violated Mother's due process and equal protection rights; (3) abused its discretion in evidentiary rulings; (4) failed to ensure a complete

record of proceedings; and (5) exhibited judicial bias. Because Mother has not provided an adequate record on appeal and has not shown error with citations to the record in her briefing, we conclude she has either forfeited her claims or has failed to show error.  Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The record on appeal consists of a clerk's transcript containing some of the documents filed in the family court and a settled statement prepared in lieu of a reporter's transcript.  The following summary is based on those documents.

*A. Custody Petitions*

Mother and Father were married in 2011, separated in 2015, and divorced in 2016.  The register of actions shows that Father initiated dissolution proceedings in December 2016 when I.P. was four years old.  But the first document in the record is from December 2017.  That month, Mother filed a request for primary physical custody of I.P., modification of child support, and legal custody to remain split 50-50 with Father.  In support of her request, Mother filed a declaration stating that she and Father had been getting along "quite well" since their separation and were giving each other financial assistance.  But according to Mother, they began having more disagreements in late 2017 over Father's alcohol consumption, among other things.  After a hearing, the family court entered an order in May 2018 awarding Mother and Father joint legal custody of I.P.  The court ordered that physical custody of I.P. be split evenly between Mother and Father throughout the week and on alternating weekends.  The court also ordered Father to pay $533 in monthly child support to Mother.

The next document in the record is Father's March 2023 request for an order permitting him to move with I.P. to San Antonio, Texas, where he had

2

requested to be stationed as an active-duty Navy officer. In support of his petition, Father contended that Mother had already been planning to move out of California "because of the high cost of living and inability to purchase a home." He asserted that he "negotiated" with Mother to find his next duty station in a more affordable location, and that they both agreed San Antonio "could work." Relying on their agreement to leave San Diego, Father requested that the Navy station him in San Antonio, and his orders were processed for June 30, 2023.

Mother submitted a declaration opposing his request, citing Father's military deployments, alleged alcohol consumption and dishonesty, and "lack of family values." She said she never agreed to move to San Antonio and was "not even that interested" in living there. While she expressed interest in living elsewhere, her declaration said she only agreed "to go check out San Antonio" while she was traveling to Arizona, but that Father "derailed" her plans. According to Mother, I.P. was "forced to be homeschooled" and Mother asked Father to find a locale where I.P. could attend school five days a week and have more stability. I.P. had already switched homeschool programs at least once because of affordability issues. Mother's plan was to move to Alabama with I.P., rent out a property, "and go to San Antonio and buy another." Mother stated that her job as a psychologist allowed her to "live anywhere in the world" and she was exploring her options, but that she would want to live in a place "that is safe and stable politically and that also meets [her] moral standards." Mother proposed that Father purchase a property wherever she and I.P. decided to move so that he could stay with them when he visits.

## B. *Hearings on Move-Away Petition*

The family court held a hearing on Father's move-away request on July 28, 2023, and both parties appeared without counsel. Neither party requested a court reporter and there is no transcript from that hearing. According to the minutes, Mother sought a continuance to review the family court services report. The court set an evidentiary hearing for two half-days on August 21, 2023, and September 6, 2023.

On August 14, 2023, an attorney representing Mother filed an ex parte application requesting that the hearing be continued to give the attorney additional time to prepare for the hearings. That same day, Mother filed a witness list which included herself, Father, Father's then-fiancée, Mother's boyfriend, the family court services counselor who wrote a report recommending that I.P. stay in San Diego, and others who purportedly witnessed Father's intoxication. The next day, the court denied the request after hearing from counsel and Mother and finding "no good cause exists to continue" the hearings. The record includes no transcript or settled statement of this hearing.

Father submitted a trial brief on August 15, 2023, with a list of proposed exhibits including text and e-mail messages from Mother, photographs of Father's house in San Antonio, text messages from I.P., and other documents.

The first half-day of the hearing went forward on August 21, 2023. Neither party was represented by counsel and the hearing was not reported. According to the minutes, after Father and Mother each gave opening statements, Mother objected to Father's exhibits as untimely and moved to exclude them. The court denied her request. The court then admitted into evidence, over Mother's objection, an e-mail and several text messages from

4

Mother about the "need to move" and other subjects. The court also admitted into evidence, without objection, other text messages from both Mother and I.P., pictures of Father's San Antonio home, Mother's Day cards to I.P.'s stepmother, and family photographs. The court excluded one of Father's proposed text message exhibits and denied his request to admit his written objections to the family court services report. Father asked the court whether I.P. could testify, and the court found it was not in I.P.'s best interest. Instead, the court "grant[ed] both parties leeway to express what the child has expressed to them."

Father testified, and Mother cross-examined him. Mother identified two exhibits: one entitled "Military OneSource Benefits" and another described as "[I.P.]'s State Test Scores." It appears neither was admitted before the end of that day's hearing.

At the second half-day of the hearing on September 6, 2023, neither party was represented by counsel and the hearing was not reported. The minutes show that the parties exchanged some documents in open court and that they were to exchange "any additional evidence" during the break. Father took the stand again, agreed to provide Mother a copy of the Texas school rankings, and then rested. The court heard Mother's testimony and excluded as unhelpful an exhibit identified as "maps." The court also excluded Mother's exhibit entitled "Military OneSource Benefits" on the ground that it lacked foundation, and excluded an exhibit labeled "photo" as compound and improper for impeachment because Mother had already testified about I.P.'s friendships. The court excluded I.P.'s state test scores because no expert was present to interpret them, and the court noted it could not admit any exhibits that Father had not received. The court did admit an

exhibit entitled "Letter from Chiropractor," and instructed the parties to exchange documents during the court's recess.

After a brief recess, the court heard testimony from the family court services counselor, Amy Hofreiter. Then Mother testified, Father cross examined her, and both parties gave closing arguments.

## C. *Family Court's Order*

The court made its findings orally at the September 6, 2023 hearing, and later in a written order. The court found, among other things: Father and Mother had successfully co-parented I.P. with joint legal and physical custody since 2017. It would be in the best interest of I.P., however, to allow her to move with Father to San Antonio. Although the move would impact Mother's relationship with I.P., "both parents previously found it was in the best interest of their child that the child relocate from San Diego." Father had "acted upon that" decision and found a community where I.P., who is unvaccinated, could attend public school "without compromising the parents' belief regarding vaccination status." Mother initiated the idea of moving away and Father relocated based on that understanding. Although I.P. had friends in San Diego, her interactions with them were limited, and if she moved to San Antonio she could "live in a community where she would be exposed to more friends[.]" She would also still have access to medical treatment in San Antonio for her seizures.

As for Mother's allegations about Father's alcohol use, the court found "no credible evidence of abuse pursuant to Family Code [section] 3044" and "no credible evidence that either parent has substance abuse issues pursuant to Family [Code section] 3011." The court granted Father's move-away request and ordered that I.P. primarily reside with Father upon relocating to San Antonio. The court further ruled that the order was "final . . . pursuant

6

to *Montenegro*" and that modification would require a "significant change of circumstances" unless agreed to by the parents. The order was entered in October 2023 and stayed for 30 days.

Mother filed this appeal in November 2023 and petitioned our court for a writ of supersedeas seeking a stay of the order beyond 30 days during the pendency of her appeal. We denied her petition.

*D. Settled Statement*

At Mother's request, the family court issued a settled statement in March 2024 pursuant to California Rule of Court, rule 8.137(f)(3)(B)(i). In its summary of the testimony and evidence, the court stated that Mother approached Father with the idea of moving I.P. to another state with "different vaccination requirements for children to attend school." Father and Mother narrowed the list to include San Antonio, although Mother first discussed moving I.P. to Alabama. Mother wanted Father to ask his brother to buy her a home, but Father refused. Father told Mother he could either stay in San Diego or relocate his duty station to San Antonio. After his transfer to San Antonio was already approved and Father could not change his location selection, Mother told Father that she was no longer willing to move there "because her boyfriend did not want to live in an area [without] a beach for surfing."

According to the settled statement, both parties testified that I.P. could receive medical care for her seizure disorder in both San Diego and San Antonio. They both confirmed that I.P. could not attend school in-person in San Diego because of her vaccination status, and that she had "few friends and limited contact with those friends." Both parties also confirmed that I.P. desired to "attend in-person school, have friends, and participate[] in school and extracurricular activities."

7

The court listed the exhibits it excluded and admitted with or without objection, but stated that it did not recall objections to the parties' testimony. The court also did not recall Hofreiter's testimony. The section of the settled statement for the court's findings repeated the October 2023 minute order verbatim.

## DISCUSSION

We begin by addressing Mother's argument that "the lack of a complete record infringes on [her] right to an effective appeal" because the state of the record is dispositive of most of her arguments.

### A. Inadequate Record

We generally review orders granting move-away requests for abuse of discretion and apply the substantial evidence standard to the court's factual findings. (*Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1598–1599 (*Jacob A.*); see *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test."]; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497 ["We review custody and visitation orders for an abuse of discretion, and apply the substantial evidence standard to the court's factual findings."].) "Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child." (*Jacob A.*, at p. 1599.)

Before we apply the standard of review, however, we must first determine whether Mother failed to meet her burden of providing a complete record on appeal. She contends the court erred in not ensuring a court reporter was present for the evidentiary hearing. But the register of actions shows that Mother requested and was granted a fee waiver in 2016 early in the proceedings. Under California Rule of Court, rule 2.956(c), she could

8

have requested an official reporter without charge.  (See Gov. Code, § 68086, subd. (b).)  Mother has not argued that she requested a reporter and did not receive one, received insufficient notice that a court reporter would not be present, or was somehow prevented from obtaining one.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 612–613 (*Jameson*) [describing notice requirements and policy directives for fee waiver recipients to receive the benefit of court reporter services].)  In *Jameson*, the Supreme Court held that a court reporter "must generally be made available to in forma pauperis litigants *upon request.*"  (*Id.* at p. 599, italics added.)  This is consistent with section 269 of the Code of Civil Procedure, which requires a court reporter in civil cases when ordered by the court "or at the request of a party."  (Code Civ. Proc., § 269, subd. (a)(1).)  Mother has articulated no legal argument as to why she is entitled to reversal of the order without a record demonstrating that she timely asked for a court reporter to be present, or that she objected to proceeding without one.

Mother's failure to provide a complete record on appeal therefore precludes a finding of error on any issues which would require a more adequate record.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 (*Foust*) [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' "]; *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977 ["Without a complete record, we are unable to determine whether substantial evidence supported the implied findings underlying the trial court's order."].)  This "follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust*, at p. 187, citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  It is Mother's burden as the appellant to make this showing.  (*Foust*, at

9

p. 187; see also *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 (*Elena S.*) [" 'It is well settled, of course, that a party challenging a judgment [or order] has the burden of showing reversible error by an adequate record.' "].)  In the absence of such a showing in the record, we must make all presumptions in favor of the family court's action.  (*Foust*, at p. 187.)  Mother is not exempt from these rules of appellate review merely because she is self-represented.  (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

> *B.* LaMusga *Factors*

With the state of the record in mind, we begin our analysis with Mother's argument that the family court misapplied factors relevant to move-away orders as described in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*).  In *LaMusga*, the Supreme Court held that family courts should ordinarily consider: "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody."  (*Id.* at p. 1101.)

Mother contends—under the banners of *LaMusga* and equal protection and due process rights—that the court erred in finding she agreed to relocate to San Antonio because Father's evidence was ambiguous and unclear.  She argues that the court should have relied on Hofreiter's report recommending that I.P. stay in San Diego because Father's testimony was "misleading" and he was engaging in "coercive control."  But as discussed, in the absence of

10

hearing transcripts and copies of relevant exhibits, we must rely on the settled statement's summary of the evidence and presume that it was supported by the actual testimony and admitted exhibits.  (See *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["To the extent the [family] court relied on documents not before us, our review is hampered.  We cannot presume error from an incomplete record."].)  Here, the court considered I.P.'s interest in the stability and continuity of the existing custodial arrangement.  The court also noted I.P.'s age and San Antonio's driving distance from San Diego.  The court considered I.P.'s loving relationship with both parents, who had successfully co-parented I.P. for several years.  But according to the settled statement, both Mother and Father testified that I.P. wanted to attend school in-person, and both parties acknowledged that she could not attend school in San Diego because of her vaccination status.

Although Mother contends she did not agree to relocate, she has produced no evidence to dispute the settled statement's conclusion that it was Mother's idea to move in the first place, and that Mother only backed out of the arrangement late in the process because her boyfriend wanted to live near a beach.  Because the settled statement also makes no mention of Father being dishonest or coercive, we presume the family court found Father to be generally credible and rejected any claim of coercive control.  Accordingly, given the sparse record and the findings in the settled statement, we discern no error based on the court's analysis of the *LaMusga* factors.

*C. Due Process*

Mother next argues that she was deprived of due process because (1) the family court misapplied *Montenegro v. Diaz* (2001) 26 Cal.4th 249 (*Montenegro*); (2) Mother had insufficient time to prepare for the first half-

11

day of the evidentiary hearing; (3) the court accepted Father's untimely trial brief and evidence; (4) the court abused its discretion by excluding impeachment evidence and admitting hearsay evidence. We disagree.

In *Montenegro*, the Supreme Court held that "a *stipulated* custody order is a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result." (*Montenegro, supra*, 26 Cal.4th at p. 258, italics added.) Here, the family court referenced *Montenegro* without analysis in stating that its order granting Father's move-away request was final, and that modification would require a "significant change of circumstances" unless agreed to by the parents. Mother cites *Montenegro* to assert that she lacked required notice that the custody order would be permanent, and that she was entitled to a three-day hearing. But *Montenegro* makes no mention of a three-day hearing requirement, nor does the case appear to apply here because the custody order in effect at the time of Father's move-away request was a final order following a hearing—not a stipulated custody order. (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 433.) Mother has cited no authorities that support her specific notice and hearing assertions, and "[m]ere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.) Accordingly, we conclude Mother has not demonstrated error based on the family court's reference to *Montenegro*.

We also conclude the court did not err in denying Mother's requests to continue the hearing. Continuances are granted only on an affirmative showing of good cause requiring a continuance. (*In re Marriage of Falcone &*

12

*Fyke* (2008) 164 Cal.App.4th 814, 823, citing Cal. Rules of Court, rule 3.1332; see *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.) We must uphold the family court's choice not to grant a continuance unless the court has abused its discretion in so doing. (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170.) Mother argues that three weeks was "grossly inadequate" time to prepare for the first day of the evidentiary hearing. The record shows she requested a continuance on July 28, 2023, to review the family court services report, and then again on August 14, 2023, a week before the evidentiary hearing, to give a newly retained attorney additional time to prepare. We presume that the court granted Mother's initial request for more time on July 28, and Mother does not argue that she had insufficient time to review the family court services report.

The family court denied the second request on August 15 "after hearing from counsel and [Mother]" and finding "no good cause exists to continue" the hearing. The record does not state the length of the continuance Mother requested that day, when she retained an attorney, or why her attorney needed more time to prepare for the hearing. Without more information about the circumstances of Mother's request and why the court denied it, we cannot conclude the trial court abused its discretion. By failing to provide a transcript or settled statement of the August 15 hearing on this continuance request, Mother has forfeited the issue for appeal.

For similar reasons, we discern no reversible error in the court's acceptance of Father's alleged untimely trial brief and evidence. Father filed his trial brief on August 15, 2023, about six days before the first day of the evidentiary hearing. The court's minute order notes, without explanation, that it overruled Mother's timeliness objection to Father's exhibits. Absent

13

more information, and without some affirmative demonstration of error, we must presume the court ruled correctly. (*Foust, supra*, 198 Cal.App.4th at p. 187.) Furthermore, although rule 5.394(b) of the California Rules of Court provides that a trial brief should be served at least five court days before a hearing, that rule applies only when a court orders that a trial brief be filed. The record does not reflect that the trial court ordered the filing of trial briefs. Mother also does not explain why she needed more time to review the proposed evidence, nor does she explain how she was "ambushed" when the list of proposed exhibits mostly consisted of her own text and e-mail messages, pictures of the house in San Antonio, and pictures of family. We further note that the second half of the hearing occurred two weeks after the first half, which would have allowed Mother additional time to marshal her own evidence in response to Father's presentation. Mother has therefore failed to show any prejudice resulting from the timing of Father's trial brief.

Lastly, we conclude that Mother has not shown the court abused its discretion by excluding her purported impeachment evidence and admitting Father's hearsay testimony that I.P. wanted to live in San Antonio. First, it is unclear what impeachment evidence Mother is referring to. The family court excluded an exhibit labeled "maps" as unhelpful, a document entitled "Military OneSource Benefits" because it lacked foundation, an exhibit labeled "photo" as compound and improper for impeachment because Mother had already testified about I.P.'s friendships, and I.P.'s state test scores because no expert was present to interpret them. The court also noted it could not admit any exhibits that Father had not received. Mother provides no cites to the record that would show which exhibits are at issue, nor does she explain in her brief what they consisted of. She refers generally to evidence showing that I.P. has a community and friends in San Diego, but

14

the court acknowledged in the settled statement that I.P. "has some friends in San Diego and has enjoyed some extracurriculars with those friends." Not only is the record insufficient for us to determine whether the court abused its discretion in excluding evidence, Mother has again not demonstrated she suffered prejudice.

As for hearsay, there is no evidence in the record that Mother preserved her objection to Father's testimony about I.P.'s preferences. The court's minute order notes: "At father's inquiry, given the child's age, the court finds it is not generally in the best interest of the minor child to testify, to look at both parents and chose [*sic*] one over the other. The court will grant both parties leeway to express what the child has expressed to them." There is no indication that Mother objected to this approach. Moreover, Mother misunderstands Family Code section 3042. Rather than prohibit children under the age of 14 from expressing a custodial preference, as Mother contends, that statute merely states that if a child is 14 or older, the court *must* allow the child to address the court. (Fam. Code, § 3042.) However, for younger children like I.P., the child's preference is relevant only if the court determines the "child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation." (*Id.*, subd. (a).) Mother points to no evidence that 10-year-old I.P. was unable to express an "intelligent preference."

"Without a reporter's transcript or the exhibits presented at [the hearing] we cannot undertake a meaningful review" of most of Mother's arguments on appeal. (*Foust, supra,* 198 Cal.App.4th at p. 187.) Instead, we "must presume the trial court acted properly." (*Elena S., supra*, 247 Cal.App.4th at p. 576 [affirming DVRO where appellant failed to provide transcript of relevant oral proceedings in trial court].) When an appellant

15

fails to convince us, as Mother has here, "by developing [her] arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," the appellant's argument is insufficient to demonstrate error. (See *Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.) Based on the limited appellate record before us, as well as the absence of any error on the face of the settled statement, move-away order, or the appellate record, we conclude Mother has failed to establish that the family court violated her due process rights.

### D. Judicial Bias

Mother argues that the family court "displayed clear bias" in Father's favor, "evidenced by several significant procedural errors, including the acceptance of late submissions from [Father]," "the exclusion of critical evidence presented by [Mother], and the improper reliance on hearsay evidence." But as we explained, Mother failed to demonstrate the court erred in its admission or exclusion of evidence, or in its consideration of Father's trial brief.

Moreover, Mother forfeited her judicial bias claim by failing to file a disqualification motion in the family court. (See Code Civ. Proc., § 170.3, subd. (c)(1) [a party who believes a judge is required to disqualify himself or herself must file a disqualification motion in the trial court "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification"]; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["We conclude that appellant's disqualification arguments are forfeited by his failure to raise them below."].) And even if Mother had properly raised the issue in the family court, she forfeited it on appeal by failing to seek review through a petition for writ of mandate, which is the exclusive appellate remedy. (See Code Civ. Proc.,

16

§ 170.3, subd. (d) ["The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate . . . ."]; *Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50–51 ["statutory motions to disqualify . . . are not appealable orders and may be reviewed only by a writ of mandate"].)

Finally, even if Mother had properly preserved and presented her judicial bias claim, it would fail on the merits.  Mother bases her judicial bias claim on the fact the family court repeatedly exercised its discretion to her detriment.  But a " ' "trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review" ' " on appeal.  (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 541; see *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 ["Numerous and continuous rulings against a party are not grounds for a finding of bias."].)

## DISPOSITION

The order is affirmed.  Father shall recover his costs on appeal.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.

17